## Belcher v. Commonwealth.

(Decided June 13, 1924.)

### Appeal from Lawrence Circuit Court.

1. Homicide—Conviction of Manslaughter Held Warranted by Evidence.—Conviction of manslaughter held warranted by evidence, under Criminal Code of Practice, section 281.
2. Criminal Law—Credibility of Witnesses for Jury.—Credibility of two witnesses contradicting one another was wholly for jury.
3. Criminal Law—Withdrawal of Admonition to Jury to Consider Testimony Only as Affecting Credibility Cured any Error.—Any error of court in admonishing jury that certain evidence could be

considered only for purpose of impeachment of witness was cured by withdrawal of admonition.

WAUGH & HOWERTON and THOMAS S. YATES for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

Appellant was indicted in the Lawrence circuit court charged with the murder of Tom Howell.

Upon his application a change of venue was granted, and the court sent the case to Carter county. On a trial in that county he was found guilty of manslaughter and sentenced to five years' imprisonment, from which judgment he is appealing.

Appellant is a man 57 years of age and lives in Lawrence county some distance from the county seat, while Howell was a young man 20 years of age and lived and was reared in the same neighborhood. Notwithstanding the disparity in their ages, Belcher and Howell were very good friends.

On Sunday, August 19, 1923, all of the Belcher family were away from home, including a school mistress who boarded there and taught school in that vicinity. On that day Howell went to Belcher's home while he was there alone, and suggested that they go to some point in Boyd county and get some whiskey. They made the trip to Boyd county, got the whiskey and on the return trip, a few miles before they reached the Belcher home, they overtook or met Nero Church, and he went from there to the Belcher home with the other two in the car.

After reaching the house they all imbibed freely of the whiskey, and at least Church and Belcher were drunk, while it is not improbable Howell also was.

About five o'clock that afternoon Howell was found dead sitting at the wheel of his Ford machine in front of and near Belcher's house, with a number of knife wounds on his left side, several of which were near his heart. Belcher says that Church and Howell, who had previously had some difficulty, got into a fight out near the car at a time when he (Belcher) has gone off on another direction to feed some chickens, and that hearing the disturbance he came back in time to see Church cut Howell several times, and found Howell dead. On the contrary, Church says that he met the other parties, got into

the machine with them and went to Belcher's house, and that Belcher at the time was drunk; that after they reached the house they began drinking whiskey from a half-gallon they had brought in the machine, and that he drank three jelly glasses of it; that they then began playing the graphophone and Howell started out of the house the back way when Belcher followed him and kicked him, and Howell said that no man could do him that way, and that they then locked arms and Belcher began stabbing Howell, who had no weapon; that Belcher had his left arm around Howell and was stabbing him with his right arm, but how many times he was not sure; that when they were finally separated Howell went towards the car and Belcher followed him, and about that time the witness became very drunk and the rest seemed like a dream to him, and the next thing he recollected was when Belcher woke him up on the back porch.

There is evidence that the previous Friday night Church and Howell had been together, and there had been some sort of altercation or quarrel between them.

It is earnestly argued for appellant that the testimony of Church is wholly discredited, and it may be admitted that its force was in a measure weakened by the testimony of the sheriff, who went to Belcher's house that night and overheard a conversation between Belcher and Church, being only a few feet from them. He testifies in substance that Belcher asked Church what he and Howell got into it about, and Church answered that Howell had threatened to shoot him, and called him a G— d— s— of a b—, and that he could not stand for that; that in the same conversation Belcher asked Church how many times he had cut Howell, and he said he knew of twice, but did not remember how many, and that it all seemed like a dream to him.

While it must be admitted that this testimony appears to be in conflict with the statements of Church as a witness, there are other facts and circumstances in evidence strongly tending to corroborate the statements of Church. It is shown that about five o'clock on that Sunday afternoon Belcher called the home of one of his nearest neighbors over the phone and when the wife of that neighbor answered he told her to tell Jim (her husband) to come over there quick, and when asked what was the matter declined to say. That man, Jim Taylor, who lived only about a quarter of a mile away, did go immediately, and there he found Howell sitting at the wheel

of the car dead, and called Belcher three times before he came from the house, and then asked him who had killed that man, when Belcher answered "he didn't know and didn't give a damn." He also states that when Belcher came out of the house he had a large knife in his hand— a knife that witness knew belonged to Belcher—and that not only the knife at the time had blood on it, but that Belcher's clothes, face and hands had blood on them. That afterwards when he again asked who had killed Howell Belcher said Nero Church had killed him, and when asked where Church was said he was around on the porch; that they went around on the porch and there found Church helplessly drunk lying on his face, and under one of his hands·was a small knife with the largest blade open, but broken off.

The school mistress who had been boarding at Belcher's home returned there late Sunday afternoon just about the time Taylor got there, and she corroborates Taylor's statement as to what occurred when he first asked Belcher who had killed Howell. Taylor further stated that there was no blood on the knife he found under Church's hand, nor was there any blood on his clothes or person.

There are many details in the evidence which we have not deemed it necessary to refer to.

The grounds for reversal are (1) that since the amendment to section 281 of the Criminal Code in 1910 this court is authorized to reverse a judgment of conviction in a criminal case where the same is against the weight of the evidence, and that as the testimony of Church in this case was virtually destroyed by the evidence of his admissions in the presence of the sheriff, the judgment rests wholly on circumstantial evidence and should not be upheld; and (2) that the court erred in not admitting as direct testimony the admissions of Church as testified to by the sheriff, and should not have limited such testimony only as impeaching evidence.

Manifestly the first contention cannot be sustained. Admitting that the testimony of the sheriff greatly weakened the evidence of Church, yet the credibility of these two witnesses was wholly for the jury. But giving due and proper weight to the evidence of the sheriff, there yet remains practically uncontroverted evidence of facts and circumstances plainly and forcefully corroborating Church's statements. A few minutes after this killing Church was found dead drunk and with no sign of blood

upon his knife, upon his clothes or upon his person, while at the same time this appellant, who was the only other person who could have committed the crime, was found with a bloody knife in his hand, blood on his clothes and blood on his face and hands.

Although it is not necessary to so decide, it may be well questioned even if Church's evidence was not in the record, if the circumstantial evidence alone would not have authorized a submission of this case to the jury, and have been sufficient to uphold a verdict of guilty.

After the sheriff in his testimony had stated the substance of the conversation between Belcher and Church, to which reference has been made, the court on its own motion said to the jury:

> "Gentlemen of the jury, this evidence is competent only for affecting the credibility of Nero Church as a witness and for no other purpose,"

to which admonition the defendant objected. At that point the attorney for the Commonwealth said:

> "I am willing that the court withdraw that admonition for the present,"

whereupon the court said:

> "It is agreed that this admonition be withdrawn for the present time, and will not be considered heard.'"

Thereafter, so far as we find, there was no further reference in the record to this matter, and wholly apart from the question whether the evidence was or not only competent as affecting the credibility of Church, it is perfectly clear that when the court withdrew the admonition it stood just as if it had never been given.

Judgment affirmed.