## Kitchen v. Commonwealth.

Oct. 30, 1942.

758

H. R. Wilhoit, D. V. Kibbey and John R. McGill for appellant.

Hubert Meredith, Attorney General, and William F. Neill, Assistant Attorney General, for appellee.

Opinion of the Court by Morris, Commissioner—Reversing.

This is a second appeal; 275 Ky. 564, 122 S. W. (2d) 121. We reversed the judgment sentencing appellant to imprisonment for three years for detaining a woman, etc., under an indictment charging carnal knowledge of Virginia Mayo, a girl over twelve and under sixteen years of age, chiefly because of failure of the court to give an instruction on the law of attempt to commit the offense charged. We found fault with the manner in which the court had selected grand and petit jurors, and gave directions to the court to remand the indictment to a jury drawn in conformity to the statute. We also found irregularities on the court's ruling on objections to improper argument on the part of prosecuting officer.

Our opinion reversing was rendered in November, 1938, and on return the indictment was remanded; a grand jury at the February, 1939, term returned indictment, and the case was tried at the same term of court resulting in a hung jury. Thereafter it was continued

from term to term, until trial at the August 1940 term, when the jury found appellant guilty, fixing the penalty at a fine of $500 and 90 days in jail, under an instruction on the common law of attempt.

Appellant in brief urges numerous grounds for reversal, presenting mainly procedural questions, it being contended that the rulings of the court in each instance constituted prejudicial error. Since this is true we shall make reference to testimony only as it appears necessary in discussing questions presented, as in our opinion on first appeal the facts are well stated, though it is claimed that contradictory evidence on the last trial somewhat weakens the case.

The first contention is that the court erred in overruling a motion to quash the indictment on the ground of irregularity in making up the list of jurors who were to do service at the August, 1940, term of court, based on an affidavit to the effect that the court in making up the list as required by the law, used a carbon making duplicate of the names and placed it in the drawer of his desk, leaving it there from the first of December until February of 1939, and that the "court room was open to the general public." The court overruled the motion to quash, and in doing so filed a memorandum in which he said he had made the carbon copy list, but had locked it in his desk drawer; held possession of the keys and was "sure no one saw the list" before it was placed in the drawer, nor the carbon copy until taken out when court commenced." This was not contradicted.

The same objectionable feature we found in the first case is not common here, nor is our opinion controlling, though it went a long way in laying down the court's measure of the sanctity which should surround the making up of juries, and it is chiefly upon the reasoning therein that appellant relies for error in the case under discussion. While we do not sanction the procedure complained of, which had there been a showing of disclosure, might have justified a reversal, we are of the opinion that there was not prejudicial error in this respect. See Hopkins v. Com., 279 Ky. 370, 130 S. W. (2d) 764.

It is contended that there was fatal variance between the allegations of the indictment and the proof. The girl's name is Virginia Mayo. The indictment charged the offense to have been committed on the person of

Virginia May. The question was raised by general objection to all proof relating to any offense committed against the person of Virginia Mayo. Counsel cites in support of his contention numerous cases where we have held variance fatal (as to names); as exemplary, Lissenbee v. Com., 198 Ky. 639, 249 S. W. 782, wherein we held fatal variance because the indictment charged a taking from Felix Turner, and the proof showed the property stolen belonged to Felix Napier. Much is said of the doctrine of idem sonans. However, we do not feel inclined to enter into dissertation on this subject, nor as to the application of cases cited by appellant.

Here appellant knew the person accusing him. He had gone through two trials when she faced him. He knew the party charging, as well as the charge he was to meet. The objection here is fully and satisfactorily answered, since it further appears that: ''No question of identity was raised on the trial and it is not pretended that the mistake in the first name was prejudicial to defendant, or prevented him from having a fair trial.'' Rose v Com., 286 Ky. 53, 149 S. W. (2d) 772, citing other authorities.

The contention that the court erred in giving an instruction on the law of attempt would be well taken if it were not for the ''law of the case'' rule. In our first opinion we reversed because of the failure of the court ''under the unusual facts'' to give such an instruction; the opinion was rendered on November 25, 1938; on June 20, 1941, we wrote Merriss v. Com., 287 Ky. 58, 151 S. W. (2d) 1030, 1034, reviewing former cases dealing with the subject and held that ''it is never necessary in this type of prosecution to instruct on the common-law crime of attempt to commit rape since every such attempt is included in and covered by Section 1158 of the Statutes, making it a felony to detain a woman against her will with intent to have carnal knowledge of her. Every attempt to have carnal knowledge of a woman by force or against her will is covered by the last-mentioned section.''

While in the instant case the evidence seems to make it appear that force was used, the proof is clear that the offense was not complete, and the court gave an instruction on the law of detaining. We would be inclined to hold error under authority of the Merriss case were it not that we are compelled to adhere to the ''law of the

case'' rule. Our opinion was the law of the case on the last trial and will prevail whether right or wrong. See Carrithers v. Jean's Ex'r, 259 Ky. 20, 81 S. W. (2d) 857, and cases cited therein. These were all civil cases, but in Johnson v. Com., 225 Ky. 413, 9 S. W. (2d) 53, citing cases to the same effect, we held that in this jurisdiction the rule applies as well to criminal cases.

We come now to alleged irregularity in the admission and rejection of evidence, which appellant contends constituted prejudicial errors. The appellant operated a grocery store on Main Street in the village of Hitchens. The store was leased from one of the prosecuting witnesses, whose evidence was damaging. The girl stated that the occurrence described by her took place on Friday afternoon; that as she was going home from school she went into the store at appellant's invitation, when he took her into a rear room and placed her on some feed sacks and attempted intercourse.

By reference to our first opinion it will be noted that Mrs. Vincent gave damaging testimony in the face of the absolute denial on the part of appellant. This witness testified that she looked through the window of the rear room and saw appellant in the act. She did not recognize the girl at the time, but later saw her coming from the store crying. She then saw the child on Sunday and broached the subject.

There was considerable issue as to whether one could look through the screened window at the rear and see very much, if any, of the interior of the room. Appellant said it could not be done. The witness said it could and that she did see what she recounted. A witness, who was teaching school at the time, was asked if she had ever tried to look into the window to ascertain if she ''could see anything inside,'' replied that she could not see ''anything at all over in the corner back next to the door that goes out in Mrs. Vincent's yard.'' There was no objection to her testimony, though she did not fix the time and could not say whether the condition of the room was the same at the time of the occurrence and when she looked in the window.

The commonwealth's attorney in rebuttal introduced a deputy sheriff who at the ''time of the trial heretofore'' took the jury to the premises for observation. He said that he looked through the rear window and

could see the sacks. There were introduced one member of a jury who had served "on one occasion," and two who had served at "former trials." Whether members of the same panel or not does not appear. Each of them said he could look through the window and "see those sacks from that window," one adding "plainly." These questions were in the main objected to, the court overruling. As to the sheriff's and one juror's testimony the court admonished that they should consider it for no other purpose than contradictory, in one instance of the testimony of appellant, and in another of the school teacher.

The defense then offered the testimony of two jurors who had served during the first trial, and who had gone on an observation trip with the officers, and each asked if they looked through and could see either to the right or left in the room. The court admonished: "Don't ask him any more questions about that; make whatever avowal you want to make." Counsel avowed that if permitted to answer each would say that he "went to the store and looked in the rear window, and there was so little light in the room that they could see no sacks at any place in the room; they could see nothing but a small strip in front of the windows." When the second juror avowed, the court directed defense counsel not to "ask any more questions about looking through the window."

There can be little doubt but that the evidence of those who went to the store long after the date of the alleged offense and undertook to tell from observation what could be seen or not seen, is incompetent. The state of weather would enter into the matter of ability to see, as well as the state and condition of the room or the window itself. This was, perhaps, opening the door too wide. Before such testimony would be competent or relevant, it should have been shown that similar conditions prevailed on the various occasions. However, since the testimony of the sheriff and jurors was allowed to stand, the court undoubtedly prejudiced defendant's rights by abruptly shutting off the sur-rebuttal evidence offered by the accused.

We can see no reason for the court so ruling, unless he was undertaking to apply the discretion vested in him by Section 593, Civil Code of Practice which is applicable in criminal cases. See Cross v. Com., 270 Ky. 537, 109 S. W. (2d) 1214. The Code allows the court to

limit the number of witnesses on a particular point "if the evidence upon it be already so full as to preclude reasonable doubt."

Here the point was a vital one. As the score stood, as far as relevant evidence was concerned, it was appellant against the witness. The testimony of the sheriff and three jurors had a tendency to tip the scales. We held error in the case of North Jellico Coal Co. v. Trosper, 165 Ky. 417, 177 S. W. 241, where the court limited parties to the introduction of an equal number of witnesses, and it appeared the defense required more for adequate presentation. See notes under Section 593, Civil Code of Practice. We are of the opinion here that the court's ruling on the matter was prejudicial.

Appellant introduced four witnesses, who testified that they were in the store at the time the girl came in, and the only thing said or done was a question by appellant as to what she wanted, and to which she replied "nothing," and left. The girl had said appellant was standing in the door and invited her in; "took hold of my arm and pulled me in when I went to the door," and that no one else was in the store. Here was a sharp factual issue.

After they had thus testified, the commonwealth introduced four or more witnesses who undertook to make it appear that the defendant's witnesses were elsewhere at the time stated. One, a supervisor on W. P. A. work said the persons who had testified that they were in the store while the girl was there did not leave their place of employment until exactly 3:30 p. m. We digress to say that the girl did not fix the time when she was in the store. Mrs. Vincent fixed the time "about 3:30." The school was dismissed about 3:15; the schoolhouse was about one-half mile from appellant's store, and the W. P. A. work the same distance.

The commonwealth introduced several witnesses who did not attempt to say that the government workers were not in the store as they had positively asserted, but were elsewhere, one saying the girl had left before the W. P. A. workers had reached the store. Another witness saw the girl pass her place some distance from appellant's store about three-thirty or four o'clock, on her way home, and saw the W. P. A. workers going toward the store some minutes later.

With reference to the testimony of those who had said that the girl had left the store before defendant's witnesses had arrived, the court admonished the jury, without suggestion from counsel and over objection of appellant, that it was to be considered only ''for the purpose of affecting the credibility'' of those who had testified as to seeing the girl enter and leave the store.

This evidence was of considerable importance, particularly that of defendant, perhaps of more probative value than the contrary·testimony, and all substantial evidence. There was no sort of effort to impeach defendant's witnesses in the manner provided by Civil Code of Practice, Section 597, applicable in criminal prosecutions. Patterson v. Com., 252 Ky. 285, 66 S. W. (2d) 513.

We find the applicable rule for admonitions in cases where it is sought to impeach as provided by the Code, laid down in Stanley's Instructions to Juries, Section 792. ''It has often been written that it is the duty of the court to admonish the jury of the purpose of evidence tending to impeach the credibility of a witness, and that it is not to be treated as substantive evidence. This refers to contradictory or inconsistent statements, (Shelton v. Com., 145 Ky. 543, 140 S. W. 670) conviction of a felony, general immoral character or interest of a witness.''

The credibility of the witnesses here, where the testimony was contradictory was wholly for the jury; Belcher v. Com., 203 Ky. 757, 263 S. W. 8. We had a similar state of facts in Gibson v. Com., 229 Ky. 505, 17 S. W. (2d) 421, and ruled that the defendant was not entitled to have the impeaching or contradictory admonition given, and we pointed to the opinion in Gibson v. Com., 226 Ky. 186, 10 S. W. (2d) 646, in which we indicated the class of cases wherein it was proper to give the admonition. Johnston v. Com., 170 Ky. 766, 186 S. W. 655. In the first Gibson case the court had refused to give an admonitory instruction as to the matter affecting credibility. We remarked [226 Ky. 186, 10 S. W. (2d) 648]:

''The jury could not have taken the commonwealth's testimony about these witnesses in any other light than in deciding whether any credit was to be given their testimony or not, and the admonition insisted upon by the appellant, if given, would not have

brought this issue any more sharply. to the jury's mind."

We agree with the first part of the quotation, but doubt the soundness of the latter part, in view of our holding in the Johnston case supra. It is elementary that the credibility of a witness and the weight and value of his testimony in determining the issue, rests exclusively with the jury even where the admonition is given as to its effect. We have frequently held that instructions should not single out or give undue prominence to or indicate to the import of any fact or set of facts. Gray v. Com., 252 Ky. 830, 68 S. W. (2d) 430. It is for the court to determine what evidence is admissible, but when admitted it is for the jury to determine weight, of course subject always to the rules relating to impeachment.

The admonition to the jury was in effect suggesting discredit of testimony which had been contradicted, not impeached. If this rule should prevail it would keep the court busy in every criminal and civil case. It might as well have been said by the court that the effect of appellant's testimony as to seeing in the window was to be considered as only going to the credibility of Mrs. Vincent, or vice versa. We are of the opinion that the giving of the admonition constituted prejudicial error.

It is also contended that remarks made by the prosecuting attorney served to prejudice appellant's substantial rights. We had a similar complaint on the first appeal, but did not specifically rule, though we clearly indicated that some remarks were improper. The record shows that there were some ten or more objections to remarks in argument, the court in each instance overruling them. We think the reference to the "tactics of the attorneys from the beginning of the case" had no place in the argument, since it threw no light on the issue.

Other objections, in the main, related to comments on the evidence or lack of evidence. For instance counsel argued at length on the fact that defense had asked the girl why she had not told her mother of the occurrences until several days thereafter. In argument it was said that she said if she told it she would be sent to the Reform School, with considerable comment on the reason for her reticence. We do not find this evidence in the present case, incorporated at least in such a way as would allow great latitude in comment.

There are other objections of the same tenor, and it would require much space and time to take up each objection and comment thereupon. Counsel for appellee do not undertake to justify to any degree these alleged objectionable remarks. They "neither condemn nor condone such alleged attacks on opposing counsel," but suggest that it is not unusual in sharply practiced cases. Again:

> "Counsel for the Commonwealth may have inadvertently misquoted some of the testimony. It is not unusual especially when they have tried a case three times to become confused about what might have been sworn to in a former trial, and not repeated on a later trial."

This is perhaps true, and ordinarily counsel could be excused for some misquotations, which if indulged might not be prejudicial, in the absence of comments which might be so.

We can only say we have frequently advised that it is always the better and safer practice to adhere to facts shown by the proof; not to go outside the record, nor to make comments not justified by the facts, though reasonable latitude is usually allowed. This matter is always addressed first to the trial court, who should rule promptly and correctly when valid objection is made. Such a course would prevent the reversal of many cases, wherein no other prejudicial error appeared. Since we are reversing on the grounds specifically set out above, we need not comment further than we have done on this complaint. Any alleged grounds set up for reversal which we have not discussed are reserved.

Judgment reversed for a new trial consistent with this opinion.