Sherman Dejuan DAVIS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Melissa FELTS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Nos. 95–SC–787–MR, 96–SC–123–TG.

Supreme Court of Kentucky.

March 19, 1998.

As Modified on Denial of Rehearing
June 18, 1998.

Julie Namkin, Assistant Public Advocate, Frankfort, for Appellant Sherman Dejuan Davis.

Daniel T. Goyette, Frank Wm. Heft, Jr., Jefferson District Public Defender, Louisville, for Appellant Melissa Felts.

A.B. Chandler, III, Attorney General, Lana Grandon, Criminal Appellate Division, Samuel J. Floyd, Jr., Criminal Appellate Division, Office of Attorney General, Frankfort, for Appellees.

COOPER, Justice.

Appellants Sherman Dejuan Davis and Melissa Felts were jointly tried in the Jefferson Circuit Court for offenses alleged to have been perpetrated against Felts's two-year-old daughter, Sabrina Felts, who died on the night of May 20–21, 1994. Davis was convicted of wanton murder and first-degree criminal abuse and sentenced to confinement in the penitentiary for one hundred (100) years for murder and ten (10) years for criminal abuse. The sentences were ordered to be served consecutively for a total of one hundred and ten (110) years. Felts was convicted of first-degree criminal abuse and sentenced to confinement in the penitentiary for ten (10) years. Davis appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). Felts's appeal to the Court of Appeals was transferred to this Court pursuant to CR 74.02(2).

Davis began living in Felts's residence in January 1994. On February 11, 1994, Sabrina's paternal grandmother, Jeanette Johnson, noticed that Sabrina had two black eyes, fingernail marks on her jaw, and bruises on her neck. She took the child to a pediatrician, Dr. John Yusk, who notified Child Protective Services. Johnson questioned Felts about the injuries and was told that neither Felts nor Davis had hurt the child, but that Sabrina might have hit her head on a table. Later, Felts posited that her own mother, Debbie Thompson, might have inflicted the injuries. Dr. Yusk's physical examination of the child revealed bruising around both eyes, the upper lip, both sides of the neck, and the buttocks. Dr. Yusk testified that these injuries could not have resulted from a fall or any other normal activities of the child. Sabrina was placed in the temporary custody of her father, DeJuan Stratton, and lived with him and his mother, Mrs. Johnson, from February 17, 1994 until April 27, 1994. On the latter date, Sabrina was returned to the custody of Felts pursuant to a court order.

On May 13, 1994, Felts went out for the evening and left Sabrina in the care of Davis. When Felts returned the following morning, she noticed that Sabrina had a "busted" lip. Davis told her that another child had hit Sabrina and caused the injury.

On Saturday, May 14, 1994, Felts called Mrs. Johnson and asked her to take Sabrina to the hospital because of her busted lip. Johnson testified that when she picked up Sabrina at Felts's apartment for weekend visitation, Davis told her that he would no longer baby-sit Sabrina, because the child kept falling off the couch and bruising herself. On Sunday, May 15, Johnson noticed that Sabrina's lip was much worse. She informed Child Protective Services, then took Sabrina to Kosair Children's Hospital for treatment before returning her to Felts's custody that evening.

On Wednesday, May 18, 1994, Felts again went out for the evening and left Sabrina in Davis's care. The next day, Davis pointed out a bruise on Sabrina's back and told Felts that the child had suffered a seizure while he was watching her. He also suggested that Sabrina may have fallen off the couch and hit her head on the coffee table, because the table was out of place. Later that day, Felts remarked to a friend, Shawntane Finn, that she wondered why her baby got bruised every time she was left with Davis.

On Thursday, May 19, 1994, Felts displayed the child's bruises to other friends and stated that she did not believe Davis was abusing Sabrina, but that perhaps he was not watching her closely enough. Since Sabrina had not had another "seizure," Felts did not take her to a doctor, but treated her with over-the-counter medication.

On Friday, May 20, 1994, Felts again went out with friends and left Sabrina in Davis's care. At approximately 3:30 a.m. that night, Davis called Emergency Medical Services (EMS) and reported that Sabrina was unconscious and having difficulty breathing. When EMS personnel arrived, they found the child on the couch in the living room and not breathing. She was taken to the emergency room at nearby Sts. Mary & Elizabeth Hospital where she was diagnosed to be in full respiratory and cardiac arrest. She was resuscitated and transferred to Kosair Children's Hospital, where she died at approximately 4:00 p.m. the following afternoon.

Dr. William Smock, an assistant medical examiner trained in clinical forensics, examined Sabrina at Kosair Hospital and found her unconscious, comatose, and not breathing on her own. She had bruises on her face, back, cheeks, sides and legs. She also had bruises below her right eye, on her back and the sides of her chest, and on her right arm and buttocks. A CAT scan revealed massive swelling of the brain and blood inside the brain and skull. Smock testified that the child had two large skull fractures on the back of her head, consistent with blunt force trauma. It was his opinion that these injuries could not have been caused by a fall from the couch and that there was "no way" that a child with this type of injury could have walked around or interacted with others. Dr. Smock testified that if Sabrina was in full cardiac arrest at 3:00 a.m., she could not have sustained her injuries prior to 10:00 p.m. the previous evening. Dr. George R. Nichols, II, state medical examiner, testified that his autopsy examination revealed the cause of death was blunt force trauma to the head of sufficient severity to have caused "instantaneous symptomology," *i.e.,* cessation of brain function, difficulty breathing, seizure activity, and coma. Dr. Nichols also testified that except for the injury to the child's lip, all of her injuries occurred simultaneously with the infliction of the skull fractures.

When Amy Lombard, a social worker, interviewed Davis on May 21, he told her that he was the only one who had access to Sabrina between 10:00 p.m. Saturday night when Felts left the residence, and 3:00 a.m. Sunday morning when he found Sabrina gasping for air. Davis testified that he put Sabrina to bed around midnight, and that when he went to her room to check on her, she was unconscious and was having difficulty breathing. He had no explanation for how the fatal injuries occurred. Tammy Hampton, Cathy Vessels and Sonya Carroll, who had been out with Felts on the night of May 20–21, all accompanied Felts to the hospital, then returned to Felts's apartment to retrieve the medication Sabrina had been taking. All

three testified that Sabrina's bed was made and did not appear to have been slept in that night.

## I. ERRORS ASSERTED BY DAVIS.

### 1. Failure to instruct on first-degree manslaughter.

■ With respect to the homicide charge, the jury was instructed on wanton murder with lesser included offenses of second-degree manslaughter and reckless homicide. Davis now argues the trial court erred in failing to instruct the jury on the offense of first-degree manslaughter based either on the theory that Davis did not intend to kill Sabrina, but instead only intended to cause her serious physical injury, or on the theory that he was acting under the influence of extreme emotional disturbance at the time he struck and killed Sabrina. At trial, however, during discussion of proposed jury instructions, Davis's attorney urged the trial court not to instruct the jury on first-degree manslaughter, and the court agreed not to do so. Davis acknowledges this issue is unpreserved, but nonetheless asks this Court to review the trial court's failure to give the instruction for palpable error pursuant to RCr 10.26. We decline to do so, because not only was any error in the trial court's failure to so instruct the jury unpreserved, it was also waived by Davis's counsel's request that no such instruction be given.

### 2. Out-of-court statements of Felts.

In addition to Shawntane Finn's testimony that Felts wondered why Sabrina got bruised every time she was left with Davis, Officer Diane Eisenback testified that Felts repeatedly stated at the hospital on the night of May 21 that "He killed my baby," and that "After we got her back, it all started happening." Finally, Eisenback testified that Felts admitted that she "should never have left last night."

There was neither an *in limine* motion to suppress these statements, KRE 103(d), nor a contemporaneous objection to their introduction. KRE 103(a)(1); RCr 9.22. Davis asserts the issue was preserved by a comment made by the trial judge at the conclu-sion of a pre-trial hearing on Felts's motion for a separate trial, *viz:*

> The only thing that concerns me, and I've cautioned the Commonwealth as it relates to the incriminating statements ·made by one defendant against the other, against the other defendant being excluded in the case-in-chief because of the *Bruton* rule. That's my only concern, and the prosecutor has assured me that they're going to do that....

The issue of Felts's out-of-court statements had not been raised when this remark was made. Since the hearing was on Felts's motion for a separate trial, the judge's remark obviously related to the contents of a recorded statement which Davis had given to the police. Davis's *in limine* motion to suppress that statement was overruled at a separate hearing.

■ Regardless, there was no error in the admission of these statements. Felts was charged and convicted of intentionally permitting Davis to inflict serious physical injuries upon her child on the night of May 20–21, 1994. Her out-of-court statements were all relevant to prove her prior knowledge that Davis had abused the child on previous occasions. All of the statements satisfied the hearsay exception for admissions. KRE 801A(b)(1). In addition, the exclamations "He killed my baby" and "I should never have left last night" clearly were excited utterances admissible under KRE 803(2). *Souder v. Commonwealth,* Ky., 719 S.W.2d 730, 733 (1986).

Davis argues that introduction of the statement, "He killed my baby," was palpable error, KRE 103(e), RCr 10.26, because it was a statement of opinion of Davis's guilt, citing *Nugent v. Commonwealth,* Ky., 639 S.W.2d 761, 764–65 (1982). However, the witness in *Nugent* had conducted an investigation of the offense, thus, his opinion of the defendant's guilt had an evidentiary foundation. Here, the evidence was undisputed that Felts was not present when the fatal injuries were inflicted, so her statement could not have been premised upon any personal knowledge of the facts. Under these circumstances, the admission of Felts's excited utterance opinion as to Davis's guilt did not rise to the level of

palpable error. *Renfro v. Commonwealth,* Ky., 893 S.W.2d 795, 796 (1995).

Davis also claims that the admission of these statements was palpable error because they were out-of-court statements of a co-defendant tending to incriminate him as the perpetrator of the offense, citing *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Bruton,* the person who uttered the out-of-court statement did not testify, thus, was not available for cross-examination. The admission of the statement under that circumstance was found to violate the Confrontation Clause of the Sixth Amendment. *Id.,* 391 U.S. at 137, 88 S.Ct. at 1628. Here, Felts did testify and was available for cross-examination regarding her out-of-court statements. Davis cites *Chumbler v. Commonwealth,* Ky., 905 S.W.2d 488, 496 (1995) for the proposition that such evidence is not admissible "unless and until" the declarant takes the stand. The statements at issue in *Chumbler* did not tend to incriminate the declarants. Thus, the Commonwealth was not, as here, introducing them to prove the guilt of the declarants. Furthermore, the United States Supreme Court subsequently refined the *Bruton* rule by holding in *Nelson v. O'Neil,* 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971) that when the confessing co-defendant elects to testify and thus subjects himself or herself to cross-examination, "It would be unrealistic ... to hold that the respondent was denied either the opportunity or the benefit of full and effective cross-examination ...." *Id,* 402 U.S. at 629, 91 S.Ct. at 1727. In *Nelson,* as here, the out-of-court statements were introduced before the declarant elected to take the stand. No *Bruton* violation occurred in the admission of Felts's out-of-court statements in this case.

### 3. Alleged prosecutorial misconduct.

There has developed a recent tendency in criminal appeals to characterize unpreserved issues as "prosecutorial misconduct" for the purpose of raising them on appeal. The only authority cited for this proposition is *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). In that case, the United States Supreme Court recognized that prosecutorial misconduct occurs when a conviction is obtained by the knowing use of false evidence. *See Miller v. Pate,* 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967). However, the Court held in *Donnelly* that a remark by the prosecutor in closing argument concerning the defendant's motives for standing trial *did not* constitute prosecutorial misconduct. We also note that in *Donnelly,* the alleged issue was preserved by a contemporaneous objection. Thus, *Donnelly* provides no authority for creating issues where none were preserved. Nevertheless, in misplaced reliance upon *Donnelly,* Davis asserts four instances of alleged prosecutorial misconduct, none of which involves the knowing use of false evidence.

First, the prosecutor elicited during cross-examination of Davis that he was unemployed and essentially being supported by Felts during the period January—May 1994. The prosecutor then attempted to elicit admissions from Davis that he was jealous and angry because Felts was still seeing her old boyfriend, Sabrina's father, and was leaving Davis at home to baby-sit while she and her friends enjoyed an active social life. The purpose of this evidence was to establish a motive, *i.e.,* that Sabrina became the target of Davis's anger and jealousy. There was no objection to any of these questions and there was a factual basis for this line of cross-examination.

Second, Davis argues it was "prosecutorial misconduct" to introduce photographs showing the injuries sustained by the victim, including two photographs taken during the autopsy and introduced by Dr. Nichols to show the extent of injuries to the victim's brain. Again, there was no objection to this evidence. The photographs were not gruesome and were relevant to prove the nature and extent of the injuries inflicted upon the victim. *Epperson v. Commonwealth,* Ky ., 809 S.W.2d 835 (1990), *cert. denied,* 502 U.S. 1037, 112 S.Ct. 885, 116 L.Ed.2d 789 (1992).

Third, Davis asserts it was "prosecutorial misconduct" for the prosecutor, in his closing argument, to characterize certain defense tactics as "smoke," citing *Kitchen v.*

*Commonwealth,* 291 Ky. 756, 165 S.W.2d 547, 552 (1942). Both objections to this line of argument were sustained and no further relief was requested. Thus, there is no error to review. *Hayes v. Commonwealth,* Ky., 698 S.W.2d 827, 829 (1985). In fact, *Kitchen, supra,* retains little precedential value. In *Slaughter v. Commonwealth,* Ky., 744 S.W.2d 407 (1987), *cert. denied,* 490 U.S. 1113, 109 S.Ct. 3174, 104 L.Ed.2d 1036 (1989), the prosecutor accused defense counsel of presenting a "great octopus" defense; of pulling a "scam;" and questioned the intelligence of defense counsel. This was held to have been within the legitimate parameters of argument. "A prosecutor may comment on tactics, may comment on evidence, and may comment as to the falsity of a defense position." *Id* at 412.

■ Fourth, Davis asserts that it was "prosecutorial misconduct" to remark during closing argument that Amy Lombard had no motive to lie, but that Davis did have a motive to lie. There was no objection to this remark, and a review of the videotape reveals that the comment was in response to statements made in defense counsel's argument that the prosecution had an improper motive for bringing the charges and that certain of its witnesses had lied. The prosecution's response was not improper. *Slaughter v. Commonwealth, supra.*

In summary, not only was there no prosecutorial misconduct, there was no error even if these issues had been preserved.

*4. Instruction on first-degree criminal abuse.*

■ The charge against Davis for criminal abuse of Sabrina related to the injuries sustained on May 13 through 18, 1994. The jury was instructed *inter alia* that it could find Davis guilty of first-degree criminal abuse if he

intentionally abused Sabrina Felts and/or intentionally permitted her to be abused when he had actual custody of her and thereby:

    (a) Placed Sabrina Felts in a situation that may have caused her serious physical injury;

AND/OR

    (b) Caused Sabrina Felts cruel punishment.

Davis asserts it was error to instruct the jury on the "permits abuse" alternative set forth in KRS 508.100(1), because (a) there was no evidence that he intentionally permitted another to abuse the child, thus violating the requirement of unanimity of the verdict, *see Hayes v. Commonwealth,* Ky., 625 S.W.2d 583 (1981) and *Boulder v. Commonwealth,* Ky., 610 S.W.2d 615 (1980); and (b) that he did not have "actual custody" of Sabrina, because he was not her parent or guardian and had never been awarded legal custody of her.

Although Davis tendered a first-degree criminal abuse instruction which excluded the "permits abuse" alternative, he tendered that instruction as a lesser included offense of murder. The criminal abuse offenses described in KRS 508.100, *et seq.,* are not lesser included offenses of homicide. *Cf. Commonwealth v. Chandler,* Ky., 722 S.W.2d 899 (1987). The only objection by Davis's attorney to the criminal abuse instruction tendered by the Commonwealth was its inclusion of "torture" and "cruel confinement" as elements of the offense. His objection was sustained and those alternative elements were deleted.

■ If a defendant objects to a part of an instruction, but not to other parts, the error is preserved only as to that part to which the objection was addressed. *Wallen v. Commonwealth,* Ky., 657 S.W.2d 232 (1983). At one point during the discussion of the proposed instructions, Davis's attorney stated that he "accepted" the instructions. At another point, he stated that he had "no objection" to the instructions. On the following morning, immediately prior to the formal reading of the instructions to the jury, Davis's attorney advised the judge that he wished to register a "general objection to the instructions tendered by the Commonwealth." He did not specify the reason for his objection, and the instructions tendered by the Commonwealth had been modified so that those were not the instructions ultimately given to the jury. Having tendered an improper instruction, having advised the trial

judge on two occasions that he "accepted" or had "no objection" to the court's proposed instructions, and having failed to specifically object to that portion of the instruction of which he now complains, Davis failed to fairly and adequately present his position to the trial court and thereby preserve the issue for review. RCr 9.54(2); *Long v. Commonwealth*, Ky., 559 S.W.2d 482 (1977).

■ Furthermore, the instruction, as given, was not improper under the state of the evidence in this case. "Actual custody" is not defined in the statute or in our common law. However, we do not believe the legislature intended to confine the criminal liability imposed by KRS 508.100 only to those having legal custody or guardianship of a child. While the legislature presumably did not intend to extend criminal liability to every person having temporary care or charge of a child, we have no difficulty discerning an intent to include persons, such as Davis, who reside within the same household and stand *in loco parentis* to the child.

■ Nor was the evidence insufficient to induce a reasonable juror to believe beyond a reasonable doubt that Davis intentionally permitted the child to be abused. *Cf. Commonwealth v. Benham*, Ky., 816 S.W.2d 186 (1991). Davis testified that the injury to Sabrina's lip occurred when she was struck by another child while in Davis's custody. The definition of abuse includes "the infliction of physical pain or injury." KRS 508.090(1). Although a child under age seven is conclusively presumed incapable of entertaining criminal intent, *Thomas v. Commonwealth*, 300 Ky. 480, 189 S.W.2d 686, 687 (1945), the "permits abuse" alternative in KRS 508.100(1) does not require intent on the part of the person who inflicted the injury, but only that the custodian intentionally permitted the abuse to occur. Intent may be inferred from the act itself and/or the circumstances surrounding it. *Tungate v. Commonwealth*, Ky., 901 S.W.2d 41 (1995); *Lambert v. Commonwealth*, Ky.App., 835 S.W.2d 299 (1992). Intent may also be gleaned from knowledge. *Lane v. Commonwealth*, Ky., 949 S.W.2d 604, 610 (1997) (concurring opinion), quoting *People v. Peters*, 224 Ill.App.3d 180, 166 Ill.Dec. 511, 586 N.E.2d 469, 476

(1991); *McGinnis v. Commonwealth*, Ky., 875 S.W.2d 518, 524 (1994). The jury was instructed on all degrees of criminal abuse, *i.e.*, intentional, wanton and reckless. Considering the evidence of multiple injuries sustained by the child while in Davis's custody and his own denial that he inflicted any of those injuries himself, it was not clearly unreasonable for a jury to conclude that he intentionally permitted Sabrina to be abused.

## II.  ISSUES ASSERTED BY FELTS.

### 1.  Sufficiency of the evidence.

■ Felts was accused of intentionally permitting Sabrina to be abused on the night of May 20–21, 1994. Felts asserts there was insufficient evidence from which a jury could have concluded that she intentionally permitted that abuse to occur. However, as indicated *supra*, intent can be gleaned from knowledge, and there was ample evidence from which a reasonable juror could have concluded that Felts knew Sabrina was being abused whenever she was left alone with Davis. *Commonwealth v. Benham, supra*.

### 2.  Separate trials.

■ The trial judge did not err in overruling Felts's motion for a separate trial. RCr 9.16.  Joinder under RCr 6.20 is appropriate where, as here, the defendants "are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." *Jackson v. Commonwealth*, Ky., 670 S.W.2d 828, 834 (1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 791, 83 L.Ed.2d 784 (1985). Even if the defendants attempt to cast blame on each other, severance is not required. *United States v. Arthur*, 949 F.2d 211, 217–18 (6th Cir.1991). The essence of the charges against these co-defendants was that Davis abused and ultimately killed Sabrina and Felts permitted him to do it. Obviously, evidence of the abuse perpetrated by Davis against Sabrina would have been admissible in a separate trial of Felts to prove that she permitted the abuse to occur. *Ware v. Commonwealth*, Ky., 537 S.W.2d 174 (1976).

### 3. Instruction on first-degree criminal abuse.

Although the motion to delete references to "torture" and "cruel confinement" as elements of first-degree criminal abuse was granted with respect to the charge against Davis, it was denied with respect to the charge against Felts. Dr. Nichols testified that except for the injury to Sabrina's lip, which was inflicted on another occasion, all of the injuries observed during the autopsy of the child's body occurred simultaneously with the fatal skull fractures. There was no evidence of either torture or confinement. The trial judge initially concluded that these alternative elements of the offense should be deleted from the Commonwealth's tendered instruction, but changed his mind when the prosecutor advised him that *Canler v. Commonwealth*, Ky., 870 S.W.2d 219 (1994) holds that severe spanking resulting in serious physical injury may constitute "torture, cruel confinement or cruel punishment." In fact, *Canler* states only that the appellant in that case *argued* that severe spanking does *not* constitute "torture, cruel confinement or cruel punishment." *Id.* at 221. The holding in *Canler* was that spanking may constitute "cruel punishment." *Id.* at 222. (The prosecutor's misstatement of this holding may have resulted from the fact that the holding is also misstated in the headnote prepared by the West Publishing Company.)

Nothing less than a unanimous verdict is permitted in a criminal case. KRS 29A.280(3); *Wells v. Commonwealth*, Ky., 561 S.W.2d 85 (1978). Unanimity becomes an issue when the jury is instructed that it can find the defendant guilty under either of two theories, since some jurors might find guilt under one theory, while others might find guilt under another. If the evidence would support conviction under both theories, the requirement of unanimity is satisfied. *Barbour v. Commonwealth*, Ky., 824 S.W.2d 861 (1992); *Ice v. Commonwealth*, Ky., 667 S.W.2d 671 (1984), *cert. denied*, 469 U.S. 860, 105 S.Ct. 192, 83 L.Ed.2d 125 (1984). However, if the evidence would support a conviction under only one of two alternative theories, the requirement of unanimity is violated. *Hayes v. Commonwealth, supra;* *Boulder v. Commonwealth, supra.* Since the evidence was insufficient to support a conviction of abuse causing torture or cruel confinement, the requirement of unanimity was violated in this case and Felts is entitled to a new trial.

For the reasons set forth in this opinion, the convictions and sentences imposed upon Appellant Davis are affirmed; and the conviction and sentence imposed upon Appellant Felts is reversed and remanded to the Jefferson Circuit Court for a new trial in accordance with the contents of this opinion.

STEPHENS, C.J., and JOHNSTONE and STUMBO, JJ., concur.

WINTERSHEIMER, J., files separate opinion, concurring in part and dissenting in part, with GRAVES and LAMBERT, JJ., joining that opinion.

WINTERSHEIMER, Justice, concurring in part and dissenting in part.

I concur with so much of the opinion that affirms the convictions and sentences imposed on Davis, but I must respectfully dissent from that portion of the opinion which reverses and remands the conviction imposed on Felts.

The right of Felts to a unanimous verdict on the offense of first-degree criminal abuse was protected by the jury instructions when all the evidence presented at trial is carefully considered. In this case, there was sufficient evidence from which the jury could reasonably infer that Felts committed first-degree criminal abuse by either permitting her daughter to be abused or by personally abusing her. Certainly, no one witnessed the fatal injuries as they were inflicted and Davis consistently denied causing any injury. The evidence clearly establishes that the child suffered an ongoing history of abuse which started when she began living with Felts and Davis, stopped when she was taken from the home, but then resumed again when she was returned. The evidence was sufficient for the jury to reasonably conclude that it was Felts who was the actual abuser.

There was medical evidence of bruising all over the body of the child, that the child had

been beaten to death and ultimately suffered a fractured skull. All of this was entirely consistent with the infliction of serious physical injury, torture and cruel confinement and punishment. It was certainly the responsibility of the jury to weigh the various conflicting statements and evidence and to evaluate the credibility of the witnesses.

In this case, the circuit judge provided the jury with thoughtful instructions based on the totality of the evidence which supported a reasonable inference that Felts had committed first-degree criminal abuse by either abusing her child or permitting the child to be abused, thereby causing her serious physical injury, placing her in a situation where she may sustain such injury or causing torture or cruel confinement or punishment as prohibited by KRS 508.100(1).

In this case, the instructions given were clearly supported by the evidence and properly included alternative theories of criminal responsibility with regard to the first-degree criminal abuse charges against Felts. The jurors could have believed either of two theories, and in this case, both interpretations are supported by evidence beyond a reasonable doubt. *Cf. Bedell v. Commonwealth*, Ky., 870 S.W.2d 779 (1993).

Here, the evidence would support conviction under both theories, and the requirement of a unanimous jury verdict is satisfied pursuant to KRS 29A.280(3) and *Wells v. Commonwealth*, Ky., 561 S.W.2d 85 (1978).

Under all the circumstances, the instructions were properly given and are fully supported by the evidence. The instructions do not blur the clear language of the statute and do not confuse the jury about the guilt of the mother.

I would affirm the conviction of Felts as well as the conviction of Davis.

GRAVES and LAMBERT, JJ., join in this opinion.