**Jeffery Neal CANLER, Appellant,**

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

No. 93–SC–049–DG.

Supreme Court of Kentucky.

Jan. 31, 1994.

Kenneth E. Dillingham, Elkton, for appellant.

Chris Gorman, Atty. Gen., Rickie L. Pearson, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

REYNOLDS, Justice.

Logan Circuit Court, by order, suppressed evidence of Jeffery Canler's confession upon the indictment against him for criminal abuse in the first degree. (KRS 508.100). The order upheld the constitutionality of the statute. Two judges of the Court of Appeals' panel reversed the order of Logan Circuit Court and held the confession admissible. The entire panel affirmed the constitutionality of KRS 508.100. We affirm the opinion of the Court of Appeals upon the constitutionality of KRS 508.100 and reverse so much of the majority opinion that would render the defendant's confession admissible.

A five-month-old infant was left at the home of her baby-sitter, Cindy Canler, whose husband, Jeffery, is the appellant. Later, on the same day, bruises were found on the child and the parents, suspecting abuse, had the baby examined by a physician. An investigation later focused upon appellant, who had been left alone with the baby while his wife was shopping.

Although charges had not been filed, Canler employed an attorney. The appellant, through his counsel, agreed to submit to a polygraph examination, but under an agreement specifically requesting that there not be any questions other than the polygraph test itself. The day prior to testing, the examination site was changed by investigators from Bowling Green to Madisonville, which occasioned a conflict in appellant's counsel's schedule and nonattendance. Prior to examination, appellant, without counsel, signed a waiver encompassing his *Miranda* rights. Canler, following a seven to ten minute polygraph examination, was questioned by the

polygraph examiner for approximately two hours and, as a result, appellant made the statement, "I did. I hit her."

The majority of the Court of Appeals' panel relied upon *Wyrick v. Fields*, 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982), and *Silverburg v. Commonwealth*, Ky., 587 S.W.2d 241 (1979), to admit the confession into evidence, holding that appellant had initiated the interrogation by agreeing to take the polygraph test, which invited the examiner to ask any questions about the alleged abuse of the child. We distinguish these cases as this appellant did not assume that questions would be asked after the polygraph examination, but markedly, appellant's attorney clearly requested and received a specific agreement to the effect that no questions, other than those relating to the polygraph test, would be asked. Herein, Detective Jenkins testified that it is a general policy of the Kentucky State Police to attempt to use a polygraph examination to obtain a confession and that he certainly was intending to obtain a confession from appellant on the date of the polygraph examination. It was error to hold that the evidence relating to the circumstances surrounding appellant's statement would be admissible to show the manner in which the confession was obtained, except for the fact that he would not be allowed to place into evidence the fact that there was a polygraph examination.

■ The issue on appeal was whether the trial court abused its discretion in suppressing the confession. Here, the trial court's ruling is conclusive so long as it is supported by substantial evidence. *Harper v. Commonwealth*, Ky., 694 S.W.2d 665 (1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986); *Crawford v. Commonwealth*, Ky., 824 S.W.2d 847 (1992); RCr 9.78. The trial court found appellant's alleged confession involuntary and substantial record evidence supports that ruling.

The Commonwealth expressly waived findings of fact which are ordinarily utilized to support the trial court's ruling. (RCr 9.78). The order now under appeal was jointly prepared by the parties.

■ An involuntary statement cannot be used at trial under any circumstances. *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). However, statements made by a defendant in circumstances violating *Miranda* are admissible for impeachment, so long as their trustworthiness satisfies legal standards. *Id.* The language in the trial court's order stating that the alleged confession/statement made by the appellant "cannot be used by either party under any circumstances," not even for use in rebuttal, is conclusive that the trial court found that the statement was involuntary.

■ While the trial court observed the witnesses and was positionally situated to consider all evidence, including appellant's affidavit (RCr 8.22), it remained the Commonwealth's burden to prove that appellant's statements were voluntary. *Tabor v. Commonwealth*, Ky., 613 S.W.2d 133 (1981). As stated in *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972):

> [W]hen a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered. Thus, the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary.

It is unnecessary to address the second issue raised by appellant.

■ At issue is whether KRS 508.100(1)(c) is unconstitutionally vague. Herein Canler argues that the trial court erred in overruling his motion to declare the statute unconstitutional. We do not agree. He argues that the court erred in ruling that a severe spanking that does not result in serious physical injury, or permanent scarring, may constitute "torture, cruel confinement or cruel punishment" as statutorily prohibited.

KRS 508.100 defines criminal abuse in the first degree:

> (1) A person is guilty of criminal abuse in the first degree when he intentionally abuses another person or permits another person of whom he has actual custody to be abused and thereby:

(c) Causes torture, cruel confinement or cruel punishment; to a person twelve (12) years of age or less, or who is physically helpless or mentally helpless.

*Cutrer v. Commonwealth*, Ky.App., 697 S.W.2d 156 (1985), rejected the unconstitutionally vague argument based upon a lack of statutory definition of "cruel punishment." The Court of Appeals correctly concluded that the plain language of KRS 508.110 and KRS 508.120 was sufficiently clear to apprise ordinary sensible persons of the types of acts they sanction. The courts have experienced little difficulty in determining what constitutes cruel punishment under the terms as found in Section 17 of the Kentucky Constitution as well as the Eighth Amendment to the United States Constitution. *Workman v. Commonwealth*, Ky., 429 S.W.2d 374 (1968), provided cruel punishment to be that punishment which shocks the conscience and violates the principles of fundamental fairness. The court is cognizant that ordinary words and statutes shall be given their ordinary meaning. KRS 446.080. The due process clause does not require the statute to meet impossible standards of specificity. Stated otherwise, the plain language of the statutes was sufficiently clear to apprise or notice ordinary and sensible persons as to the types of acts that the statutes sanctioned.

Appellant has, in essence, requested the court to hold, as a matter of law, that spanking can never be cruel punishment. It is, however, the jury's function to determine whether the amount of force used during a spanking "shocks the conscience" or is "heartless and unfeeling." *Connelly v. American Bonding & Trust Co.*, 113 Ky. 903, 69 S.W. 959 (1902), defines "cruel" as "heartless and unfeeling." It is the jury's function to determine whether the amount of force used during a spanking constitutes cruel punishment. As the Court of Appeals aptly stated, we do not find that spanking can never be cruel punishment, and until such determination is made, we do not decide whether the evidence here is sufficient to sustain a finding of cruel punishment under KRS 508.100(1)(c).

The opinion of the Court of Appeals is reversed in part and affirmed in part. It is reversed as to the admissibility of appellant's confession, and is affirmed with respect to upholding the constitutionality of KRS 508.-100(1)(c).

STEPHENS, C.J., and LAMBERT, LEIBSON and STUMBO, JJ., concur.

SPAIN, J., concurs in part and dissents in part by separate opinion in which WINTERSHEIMER, J., joins.

SPAIN, Justice, concurring in part and dissenting in part.

I agree with the Majority that KRS 508.-100(1)(c) is not unconstitutionally vague. I respectfully dissent, however, from the holding that the appellant's confession was inadmissible. In my opinion, the Court of Appeals correctly found that the appellant, by agreeing to take a polygraph test, in effect "initiated interrogation"; i.e., invited the examiner to ask him questions about the abuse of the Hall baby. In so ruling, the Court of Appeals' opinion cited as precedent *Wyrick v. Fields*, 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982). In that case, the accused, Fields, retained counsel after police charged him with raping an eighty-one-year-old woman. At his request, Fields was given a polygraph examination after he had signed a consent form waiving his constitutional rights to remain silent and to the advice of counsel. After administering the test, the examiner advised Fields that he had failed the test, and asked him if he could explain his answers. Fields then confessed to the crime.

The U.S. Supreme Court found that Fields had initiated interrogation when he requested a polygraph examination:

∴. Fields waived not only his right to be free of contact with the authorities in the absence of an attorney, but also his right to be free of interrogation about the crime of which he was suspected. Fields validly waived his right to have counsel present at "post-test" questioning, unless the circumstances changed so seriously that his answers no longer were voluntary, or unless he no longer was making a "knowing and intelligent relinquishment or abandonment" of his rights. (Citing *Edwards v.*

*Arizona,* 451 U.S. 477, 482; 101 S.Ct. 1880, 1883; and 68 L.Ed.2d 378 (1981).)

*Wyrick,* 459 U.S. at 47, 103 S.Ct. at 396, 74 L.Ed.2d at 218.

In the present case, Canler also agreed to take the polygraph test and waived his right to have counsel present during the exam. There is no evidence that Canler was coerced into signing the written waiver nor into answering questions after the polygraph machine was disconnected. The *Wyrick* court specifically held that no further *Miranda* warnings were required:

> The Court of Appeals relied on two facts indicating the need for a new set of warnings: the polygraph examination had been discontinued, and Fields was asked if he could explain the test's unfavorable results. To require new warnings because of these two facts is unreasonable. Disconnecting the polygraph equipment effectuated no significant change in the character of the interrogation. The CID agent could have informed Fields during the examination that his answers indicated deceit; asking Fields, after the equipment was disconnected, why the answers were bothering him was not any more coercive.

*Wyrick,* 459 U.S. at 47, 103 S.Ct. at 396, 74 L.Ed.2d at 218.

The majority states that Canler's submission to the polygraph examination was "... under an agreement specifically requesting that there not be any questions other than the polygraph test itself." However, Detective Jenkins, with whom Canler's attorney made the agreement concerning the polygraph exam, maintains that he only agreed that *he* would not interview Canler at Madisonville where the polygraph exam was to be administered at the KSP crime lab, and that he accordingly took no part in Canler's interrogation.

The majority also attempts to distinguish the *Wyrick* case, *supra,* and the case of *Silverburg v. Commonwealth,* Ky., 587 S.W.2d 241 (1979), from the present case by stating that "... this appellant [Canler] did not assume that questions would be asked after the polygraph examination...." This contention was also answered by the *Wyrick* court as follows:

> [I]t would have been unreasonable for Fields and his attorneys to assume that Fields would not be informed of the polygraph readings and asked to explain any unfavorable result. Moreover, Fields had been informed that he could stop the questioning at any time, and could request at any time that his lawyer join him. Merely disconnecting the polygraph equipment could not remove this knowledge from Fields' mind.

*Wyrick,* 459 U.S. at 47, 103 S.Ct. at 396, 74 L.Ed.2d at 219.

In view of all of the above, I would affirm the holding of the Court of Appeals that Canler's confession to abusing the Halls' baby, would be admissible at his trial.

WINTERSHEIMER, J., joins this concurring and dissenting opinion.