Dietra Jane POWELL, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 96–CA–0636–MR.

Court of Appeals of Kentucky.

Nov. 14, 1997.

Discretionary Review Denied by Supreme Court Aug. 26, 1998.

Stephen B. Humphress, Theodore H. Lavit, Theodore H. Lavit & Assoc., P.S.C., Lebanon, for Appellant.

A.B. Chandler III, Attorney General, Courtney A. Jones, Assistant Attorney General, Frankfort, for Appellee.

Before WILHOIT, C.J., and COMBS and JOHNSON, JJ.

*OPINION*

WILHOIT, Chief Judge.

This appeal from a conditional plea of guilty to six counts of possession of a forged instrument, second degree (KRS 516.060(1)), primarily challenges the admissibility of a confession obtained following a polygraph examination. Issues of the voluntariness of the waiver of right to counsel and limitations placed on the defendant's cross-examination of the polygraph examiner are also raised.

Dietra Jane Powell was employed as a receptionist in a nursing home where a portion of her responsibilities involved cashing checks drawn by her supervisor, Rita Lucas, on a patient trust account. Powell caused six unauthorized checks to be drawn on this account; the Commonwealth alleged that Powell forged the in-

struments and then endorsed the checks in her own name. Lucas noted discrepancies in the checking account and Powell's actions were discovered. Powell insisted that she did not commit the crimes and pled not guilty.

During pretrial negotiations with the Commonwealth, Powell offered to undergo a polygraph examination given by the Kentucky State Police. The Commonwealth agreed and Powell submitted to a polygraph. The exam was conducted by Richard W. Kurtz of the Kentucky State Police Polygraph Unit in Frankfort, Kentucky. Before administering the exam Kurtz explained to Powell the testing procedure, informed her of her rights, and obtained a signed waiver of those rights. He then proceeded to give the exam.

Approximately a quarter of an hour later, Kurtz disconnected the polygraph machine and informed Powell that several of her answers indicated deceit. He asked whether she could explain these results of the polygraph examination. According to Kurtz's report, Powell first told Kurtz that she had filled out five of the six checks minus the maker's signature and then Lucas signed them. Powell also stated that she did sign Lucas' name to one of the checks but asserted that it was with Lucas' permission. During the one hour post-polygraph questioning by Kurtz, Powell eventually admitted that she had forged all six checks without Lucas' knowledge.

A month before the scheduled trial date, the Commonwealth gave Powell notice that it intended to call Kurtz as a witness and to use his report and the confession gained during the post-polygraph questioning. At trial Powell strenuously objected to allowing Kurtz to testify. The court overruled the objection and permitted testimony that Powell had admitted committing the crimes and the use to which she put the money obtained from the forged checks. Powell then sought to question Kurtz regarding his background and profession; the court disallowed this line of questioning. In light of this testimony, Powell

entered a conditional guilty plea on the second day of trial. This appeal followed.

██ Powell's first argument is that the confession should have been suppressed because her Sixth Amendment right to assistance of counsel was violated by the post-polygraph questioning. This very issue was considered and rejected in *Fields v. Wyrick,* 706 F.2d 879 (8th Cir.), *cert. denied,* 464 U.S. 1020, 104 S.Ct. 556, 78 L.Ed.2d 728 (1983). The facts in *Fields* and this case are virtually identical. The court's observations there are equally applicable to the case before this court:

> Petitioner ... argues that his sixth amendment right to counsel was violated when the interrogation at the polygraph examination went beyond the scope of an "agreement" between appellant's counsel and law enforcement officers to limit the examination to questions designed to reveal deceit. Petitioner maintains that any waiver of his right to counsel made prior to the polygraph examination must be viewed as limited to this portion of the examination, and that he did not waive his right to have counsel present during the post-test interrogation....
>
> The record in this case discloses that Fields not only initiated a conversation with the authorities, but that "[b]y requesting a polygraph examination, he initiated interrogation." *Wyrick . v. Fields, supra,* [459 U.S. 42 at 47] 103 S.Ct. [394] at 396 [74 L.Ed.2d 214 (1982)]. Moreover, there is clear evidence that Fields was fully informed and understood prior to the examination that he had a right to have counsel present at the interrogation, to stop answering questions and to speak to an attorney at any time, and that he expressly waived those rights prior to the interrogation.

*Fields,* 706 F.2d at 881–82 (footnotes omitted). Powell's case is factually identical to *Fields,* and like the court in that case, we conclude that she waived her Sixth

Amendment right to the assistance of counsel.

Powell next argues that if she did waive her Sixth Amendment right to counsel, then the waiver was not done voluntarily, intelligently, knowingly and intentionally. In support of this argument, Powell discusses a recent case in which the Kentucky Supreme Court held that a confession obtained during a post-polygraph interrogation was not voluntary and, therefore, was inadmissible. *See Canler v. Commonwealth,* Ky., 870 S.W.2d 219, 221 (1994). Powell urges that the outcome in her case should be identical to that in *Canler.*

There is one significant difference between the facts in *Canler* and those in the case before us; in *Canler* counsel had obtained a specific agreement from the Commonwealth that no questions beyond those posed during the polygraph examination itself would be asked of Canler. *Id.* After examining the multitude of documents in the record exchanged between Powell's counsel and the Commonwealth's attorney, there is no indication that Powell or her counsel had placed any such limitation on her examination. As observed by the court in *Fields,* 706 F.2d at 881, it would have been unreasonable for the appellant and her attorney to have assumed that she "would not be informed of the polygraph readings and asked to explain any unfavorable result." While the burden is on the Commonwealth to prove that Powell's waiver was voluntary, where the defendant initiated the contact with the examiner, did not request any restrictions upon the questioning, and waived her right to counsel (along with other constitutional rights) in a written and signed form, that burden has been met. *See e.g., Fields,* 706 F.2d at 882 (quoting *Wyrick v. Fields,* 459 U.S. 42, 47, 103 S.Ct. 394, 396, 74 L.Ed.2d 214 (1982)).

Powell next posits that her confession should be suppressed because it is a part of the polygraph examination and, therefore, she claims, inadmissible under Kentucky law. *See Morgan v. Commonwealth,* Ky., 809 S.W.2d 704, 706 (1991).

In the alternative, she argues that if the post-polygraph questioning is separate and distinct, then use of her confession is in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ Of course, Powell's statements of guilt made following the polygraph examination are not the same thing as testimony by the examiner as to the results of the test itself. It is the results of the test itself and the fact that she took it which are inadmissible, not her confession after the test. Nor, in this case, is her confession a violation of *Miranda.* The Fifth Amendment right to counsel for a polygraph examination has been considered in *Wyrick v. Fields,* 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982) (the precursor to *Fields v. Wyrick, supra* ). In *Wyrick* the Court addressed the argument made by Powell here as follows:

> The [Eighth Circuit] Court of Appeals relied on two facts indicating the need for a new set of warnings: the polygraph examination had been discontinued, and Fields was asked if he could explain the test's unfavorable results. To require new warnings because of these two facts is unreasonable. Disconnecting the polygraph equipment effectuated no significant change in the character of the interrogation. . . . [I]t would have been unreasonable for Fields and his attorneys to assume that Fields would not be informed of the polygraph readings and asked to explain any unfavorable result. Moreover, Fields had been informed that he could stop the questioning at any time, and could request at any time that his lawyer join him. Merely disconnecting the polygraph equipment could not remove this knowledge from Fields' mind.

*Wyrick,* 459 U.S. at 47, 103 S.Ct. at 396.

■ Finally, Powell argues that the limitation on her cross-examination of Kurtz denied her right to confront the witnesses against her. She has failed to show any prejudice to her occasioned by the trial

court's refusal to permit her to ask certain questions of this witness. The questions, as posed, were destined to lead to the very kind of testimony condemned in *Morgan v. Commonwealth,* 809 S.W.2d 704. The judgment of the circuit court is affirmed.

All concur.