# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# Supreme Court of Kentucky

FINAL

2016-SC-000649-MR

DATE 9/6/18 _Kim Redmon, DC_

NATHANIEL WADE TUCKER                          APPELLANT

V.

ON APPEAL FROM OHIO CIRCUIT COURT
HONORABLE RONNIE C. DORTCH, JUDGE
NO. 12-CR-00228

COMMONWEALTH OF KENTUCKY                  APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Nathaniel Wade Tucker appeals as a matter of right from the judgment of the Ohio Circuit Court convicting Tucker of second-degree manslaughter, first-degree criminal abuse, two counts of second-degree criminal abuse and of being a persistent felony offender in the first-degree.[1] Tucker was sentenced to

---

[1] Tucker's sentence was a result of the criminal abuse of three minor children, JJ, JO and DO, and the resulting death of JO. On February 18, 2018, Tucker filed a Motion to Withdraw Arguments from his brief. Tucker stated in a sworn affidavit that he changed his mind about pursuing a new trial due to the risk of receiving a longer sentence. While there were originally ten arguments raised on appeal, Tucker withdrew all arguments except for the argument that the trial court erred in denying his motion for directed verdict as to first- and second-degree criminal abuse of DO. As such, this opinion only focuses on the facts relevant to the charges for criminal abuse of DO. Further, with his motion Tucker filed an amended brief, which contained the same information for the remaining argument as in the original brief. The Commonwealth did not object.

twenty-years' imprisonment for the second-degree manslaughter of JO, twenty years for the first-degree criminal abuse of JO, fifteen years for the second-degree criminal abuse of JJ, and ten years for the second-degree criminal abuse of DO, all to run concurrently for a total sentence of twenty years' imprisonment. On appeal, Tucker argues that the trial court erred in denying his motion for directed verdict as to first- and second-degree criminal abuse of DO. Finding no error, we affirm the trial court.

## **FACTS AND PROCEDURAL HISTORY**

When Tucker met Samantha Oakley, she had five minor children including DO, who was five years old during the events in question. Oakley and Tucker met in March 2012 and Tucker moved in with her and her children in late April 2012. Tucker worked as a lineman in Indiana from Monday through Thursday. He returned to Oakley's apartment in Hartford, Kentucky, every Thursday around 9:00 or 10:00 p.m.

On Thursday, October 18, 2012, when Tucker returned to the apartment Oakley was awake and the children were sleeping. Oakley informed Tucker that DO had misbehaved at school. Tucker got five-year-old DO out of bed, made him pull his pants and underwear down, and whipped his bare bottom with his belt twice, leaving marks that were visible the next day.

After a series of events during October 18-22, 2012, that ultimately resulted in the death of JO, Oakley's four-year-old son, Tucker faced numerous charges, including first-degree criminal abuse for whipping DO with his belt. At the close of the Commonwealth's case, Tucker moved for a directed verdict

2

for the count of first-degree child abuse involving DO. Tucker argued that no medical records or evidence of a serious physical injury existed, and that even though photos of DO's bottom were taken at the hospital, DO received no medical treatment. Tucker further argued that the Commonwealth failed to provide evidence of torture, cruel confinement, or cruel punishment as required under Kentucky Revised Statute (KRS) 508.100(1)(c). In response, the Commonwealth countered that sufficient evidence existed to allow the jury to determine whether the belt-whipping was cruel punishment. After the trial court denied the motion, the jury convicted Tucker of second-degree criminal abuse. Additional facts will be discussed where relevant.

## ANALYSIS

Tucker argues that the trial court erred by denying his motion for directed verdict because the Commonwealth failed to present sufficient evidence to support jury instructions for first- and second-degree criminal abuse of DO.

KRS 508.100(1) states that a person is guilty of first-degree criminal abuse when he intentionally abuses another and thereby (a) causes serious physical injury; or (b) places him in a situation that may cause serious physical injury; or (c) causes torture, cruel confinement or cruel punishment. Second-degree criminal abuse requires the same findings, except it requires a wanton act rather than an intentional act. KRS 508.110(1). In response to the motion for directed verdict, the Commonwealth stated that it was proceeding under

part (c) of the statute, and specifically that Tucker whipping DO with his belt constituted cruel punishment.

As stated in *Commonwealth v. Benham*, the standard for ruling on a motion for directed verdict is as follows:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

816 S.W.2d 186, 187 (Ky. 1991).

To support a finding of criminal abuse, a reasonable juror could have determined that Tucker whipping DO with a belt constituted cruel punishment based on the testimony and photographs presented at trial. The Commonwealth introduced a recording and transcript of an October 20, 2012, interview[2] where Tucker admitted that he whipped DO with his belt after the interviewing officers referenced DO's examination at the hospital and the discovery of two bruises on his bottom. During trial, Tucker again admitted to the abuse by testifying that on October 18, 2012, he got DO out of bed and

---

[2] The interview was conducted by Detective Jonathan Vaughn, Detective Tim Payne, and Martee Ward of the Department for Community Based Services. The interview took place at the hospital where JO was taken for treatment of his severe injuries.

4

whipped him with his belt, leaving marks that were visible the next day. Additionally, in an October 2012 interview, DO testified that Tucker hit him with his belt after making him pull his pants and underwear down. Photographs of the bruises were admitted at trial. Further, Oakley's eldest child, a daughter,[3] testified that Tucker would tell DO to pull his pants down and hit him with a belt on his bottom. She stated that Tucker would hit DO many times and that it happened often.

On the motion for directed verdict, the trial court was required to review the evidence in the light most favorable to the Commonwealth. *Benham*, 816 S.W.2d at 187. In the present case, the evidence was sufficient to allow a reasonable juror to conclude that Tucker was guilty of inflicting cruel punishment on DO, a small child. The trial judge properly assumed that the evidence presented was true and allowed the jury to assess witness credibility and decide what weight to give to the evidence. After hearing the evidence, the jury deliberated and considered charges of criminal abuse in the first, second and third degrees, finding Tucker guilty of second-degree criminal abuse. Given that the Commonwealth used both testimony and photographs to establish that Tucker whipped DO with his belt, it was not unreasonable for a jury to find guilt. *Benham*, 816 S.W.2d at 187.

---

[3] This testimony was given by AO, Oakley's eldest minor child, who was almost seven years old when the events occurred and almost eleven years old at trial. There were no charges against Tucker pertaining to AO.

5

While Tucker concedes that spanking with a belt can be cruel punishment, he states that it must be severe enough to "shock the conscience" or be "heartless and unfeeling," and in this case no evidence of cruel punishment was presented. In *Canler v. Commonwealth*, 870 S.W.2d 219, 222 (Ky. 1994), this Court held that it is "the jury's function to determine whether the amount of force used during a spanking 'shocks the conscience' or is 'heartless and unfeeling.'" (quoting *Connelly v. American Bonding & Trust Co.*, 69 S.W. 959 (1902)). The *Canler* Court rejected the idea that, as a matter of law, spanking could never constitute cruel punishment under the criminal abuse statute. 870 S.W.2d at 222. Here, it was for the jury to decide whether Tucker whipping DO with his belt constituted cruel punishment, and their finding is legally sustainable.

Finally, Tucker argues that the only evidence introduced to show the severity of the whipping were the photos of DO's bottom. However, three people, including Tucker, provided testimony that supported the abuse charge as to DO. Tucker also argues that there was no evidence of "multiple strikes." However, in an interview on October 19, 2012, the day after the belt-whipping, he specifically stated that DO "got two licks."[4]

In sum, the trial court properly denied Tucker's motion for a directed verdict. The trial court was required to assume the Commonwealth's evidence was true and to allow the jury to assess the credibility and appropriate weight

---

[4] *See supra* note 2 and accompanying text.

6

to be given.  Taking all the evidence as a whole, it was reasonable for the jury to find Tucker guilty of second-degree criminal abuse as to DO.

## **CONCLUSION**

For the foregoing reasons, we affirm the trial court's conviction and judgment.

All sitting.  All concur.  Cunningham, J., concurs by separate opinion, in which Wright, J., joins.

CUNNINGHAM, J., CONCURRING:  I concur with the majority's opinion.  However, it is important that we thread this needle carefully and slice this bacon very thin.  Thus, I write.

This opinion does not—at least in this writer's view—criminalize corporal punishment or spanking with a belt specifically.  The term "cruel punishment" is vague and can be open to divergent interpretations.  However, our court has upheld "cruel punishment" against a constitutional attack for vagueness.  *Canler v. Commonwealth*, 870 S.W.2d 219, 222 (Ky. 1994).  The cleaner, safer charge for such conduct—with sharper definition—would seem to be assault.

No matter.  Here, we deal with physical abuse and "cruel punishment."  To avoid undue intrusion into parental discipline, this term "cruel punishment" must always be contextual.  The infliction of corporal punishment by a caring and loving parent, whereby—in an isolated incident—marks might be left, is one thing.  What we have in this case is quite another.  The house in which these poor children lived became a deadly torture chamber.  Appellant was the

primary assailant, the children's own mother a shameful conspirator. The children were helpless.

Here, the Appellant was not even a parent or step-parent of these children. He was a "boyfriend," with all the uncertain responsibilities that status now carries in our society. At this court, we have reviewed a heart-rending parade of child abuse by such persons. Much too often they are neither a "boy" nor a "friend." In this case, Appellant was an interloper in the family home, having known the mother of these children for only six months. It was six months of constant abuse for her children.

In the regular and ongoing physical abuse of these small children, Appellant broke the leg of D.O.'s little three-year-old brother. He killed D.O.'s little four-year-old brother by beating him to death. Appellant worked out of town during the week and returned home only for the weekends. The evidence revealed that the weekends were hellish for these defenseless innocents.

Then, on the night of October 18, 2012, Appellant returned home late. All the children had gone to bed. The mother reported to Appellant that D.O. had misbehaved in school. What odious misbehavior a little five-year-old boy could have possibly committed to deserve his impending fate is not reported. Nevertheless, he is dragged from his slumber, undoubtably bedazzled and frightened by the sudden violence, and is whipped with a large belt by someone not even his kin. And, tragically, by someone who is a deadly threat to him and his siblings.

Under these circumstances, and in the context of this house of horrors, "cruel punishment" is a term which aptly fits.

I concur. Wright, J., joins.

COUNSEL FOR APPELLANT:

Steven Goens
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

William Robert Long, Jr.
David Bryan Abner
Assistant Attorneys General
Office of the Attorney General

# Supreme Court of Kentucky

2016-SC-000649-MR

NATHANIEL WADE TUCKER          APPELLANT

           ON APPEAL FROM OHIO CIRCUIT COURT
V.           HONORABLE RONNIE C. DORTCH, JUDGE
            NO. 12-CR-00228

COMMONWEALTH OF KENTUCKY          APPELLEE

## ORDER CORRECTING

The Memorandum Opinion of the Court rendered August 16, 2018, is corrected on its face by substitution of the attached corrected Opinion entered August 20, 2018, in lieu of the original Opinion of the Court. Said correction does not affect the holding of the original Memorandum Opinion of the Court.

ENTERED: August 20, 2018.

_____
CHIEF JUSTICE