RENDERED: NOVEMBER 6, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0976-MR

BRAY A. NELSON                                                        APPELLANT


APPEAL FROM BOONE CIRCUIT COURT
v.        HONORABLE RICHARD A. BRUEGGEMANN, JUDGE
ACTION NO. 17-CR-00191


COMMONWEALTH OF KENTUCKY                                  APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, MAZE, AND MCNEILL, JUDGES.

CALDWELL, JUDGE: Appellant Bray Nelson was convicted of criminal abuse in

the first degree in the Boone Circuit Court. He was sentenced by the court to a

term of imprisonment of five (5) years. He appeals his conviction, arguing that the

Commonwealth presented insufficient evidence of guilt and that consequently the

trial court should have entered a directed verdict. We find that the prosecution did

provide sufficient evidence of guilt and the trial court properly denied the motion for a directed verdict. We affirm.

## FACTS

Bray Nelson (Nelson) was an employee of the Campbell County Jail when he met Angel, a fellow employee. Despite his being married with children, Nelson and Angel had a more than platonic relationship. Despite this impropriety, Angel was friendly with Nelson's wife and Angel's two-year-old son was friends with Nelson's two small children; Angel would often babysit the Nelson children and the Nelsons reciprocated.

On February 18, 2017, Angel was scheduled to work an overnight shift at the Boone County Jail and the Nelsons were going to watch her young son for her. She dropped her son off on her way to work and then after her shift ended she returned to the Nelson home. Nelson let her in the home when she arrived and told her that her son was fine, and he was still asleep. Angel saw her son asleep in the living room and then went downstairs to sleep for a bit.

After her nap, Angel and Nelson engaged in sexual activity and only after did she interact with her child and notice he had bruising on his body in several locations. Angel testified that Nelson admitted having "whipped" the child when he would not stop crying and go to sleep, and Nelson admitted having used a belt on the back of the child's legs, which were covered in a large bruise. Angel

-2-

testified she was too frightened of Nelson to confront him about the "whipping," and stayed at the Nelson home that day with the child, even having dinner with the family.

She was supposed to meet the child's father at a predetermined location for a scheduled custody exchange that evening, but instead when she left the Nelson home with the child, she drove directly to the father's residence and showed him the bruises. They took the child to the local hospital and he was transported via ambulance for his safety to Cincinnati Children's Hospital. The child was released early in the morning of the next day and had no permanent injuries due to the "whipping."

When the police contacted Angel to investigate the matter, she did not tell them she was involved romantically with Nelson, nor did she initially tell them that he had admitted "whipping" the child with a belt to her. Rather, she told the authorities that the child had simply fallen while playing at the park. The detective had Angel call Nelson on a recorded line, and during the call he admitted having caused the bruises with a belt.

When interviewed, Nelson admitted "spanking" Angel's son with an open hand the night he was watching him for her and said he did so three or four times. He denied trying to hurt the child, insisting he was disciplining him as he did his own children. After being confronted with the recording of the call with

Angel wherein he had stated using a belt, he admitted to police that he had held the child by the arm with one hand and used a belt to strike him with the other.

Angel testified at the trial and the jury was shown photographs of the child's bruises. Nelson testified in his own defense and denied having used a belt, despite having told the detective he had done so. He explained that he had only said such to the police to protect his wife from being implicated in the abuse of the child, as he didn't think she had been truthful with him about her actions towards the child. He denied intending to cause the child any injury and insisted he was simply trying to discipline him for crying for his mother after she left.

The jury found Nelson guilty of criminal abuse in the first degree and recommended a total sentence of imprisonment of seven and a half years. The trial court imposed a five-year sentence over the jury's recommendation. Nelson appeals, arguing that the trial court erred in not granting a directed verdict after the prosecution failed to offer sufficient proof of intent to harm and cruel punishment, both elements of the offense.

## STANDARD OF REVIEW

The Kentucky Supreme Court, in a similar case involving the criminal abuse of a two-year-old child, clearly articulated the standard on reviewing the denial of a motion for directed verdict.

> On motion for directed verdict, the trial court must draw
> all fair and reasonable inferences from the evidence in

favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Mason v. Commonwealth*, 331 S.W.3d 610, 616 (Ky. 2011) (citing *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991)).

## ANALYSIS

At the outset, we note that Nelson failed to properly preserve for appellate review his motion for directed verdict by failing to renew the motion after the defense presented its case to the jury, something he acknowledges, and thus he requests palpable error review pursuant to Kentucky Rules of Criminal Procedure (RCr) 10.26.

It is black-letter law that, in order to preserve an insufficiency-of-the-evidence allegation for appellate review, "[a] defendant must renew his motion for a directed verdict, thus allowing the trial court the opportunity to pass on the issue in light of all the evidence[.]" In other words, a motion for directed verdict made after the close of the Commonwealth's case-in-chief, but not renewed at the close of all evidence—i.e., after the defense presents its evidence (if it does so) or after the Commonwealth's rebuttal

evidence—is insufficient to preserve an error based upon insufficiency of the evidence. In this case, Appellant moved for a directed verdict at the close of the Commonwealth's case, but did not renew the motion at the close of evidence, and Appellant admits that he failed to properly preserve the issue he presents to us.

Appellant however urges us to review the sufficiency of the Commonwealth's evidence under RCr 10.26 and alleges that the trial court's failure to direct a verdict of acquittal constituted palpable error. A palpable error is one of that [sic] "affects the substantial rights of a party" and will result in "manifest injustice" if not considered by the court, and "[w]hat it really boils down to is that if upon a consideration of the whole case this court does not believe there is a substantial possibility that the result would have been any different, the irregularity will be held nonprejudicial." We recognize not only that "the burden is on the government in a criminal case to prove every element of the charged offense beyond a reasonable doubt and that the failure to do so is an error of Constitutional magnitude," but also that the nature of the error alleged here is such that, if the trial court did, in fact, err by failing to direct a verdict of acquittal, that failure would undoubtably have affected Appellant's substantial rights. And, we likewise observe that the trial result necessarily would have been different if the trial court had directed a verdict in Appellant's favor. Accordingly, we examine the merits of Appellant's allegation.

*Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 836-37 (Ky. 2003) (citations

omitted).

Thus, if insufficient evidence was presented to the jury such that a

directed verdict should have been entered, that circumstance would amount to

palpable error. Therefore, we will review Nelson's allegations of error despite the lack of preservation.

Kentucky Revised Statutes (KRS) 508.100 defines the offense of criminal abuse in the first degree.

> (1) A person is guilty of criminal abuse in the first degree when he intentionally abuses another person or permits another person of whom he has actual custody to be abused and thereby:
>
> > (a) Causes serious physical injury; or
> >
> > (b) Places him in a situation that may cause him serious physical injury; or
> >
> > (c) Causes torture, cruel confinement or cruel punishment; to a person twelve (12) years of age or less, or who is physically helpless or mentally helpless.

Nelson alleges that the prosecution failed to prove both that he acted intentionally and that the child suffered cruel punishment, and assigns as error the trial court's refusal to enter a verdict on the sole count because of the failure of proof.

As the Supreme Court made clear in *Mason*, *supra*, the jury is the arbiter of credibility. Nelson testified he had told the detective that he had used a belt on the child, but denied at trial having actually done so. Thus, the jury had a choice of whether to believe that he had been truthful in his discussions with the detective and Angel or whether he was being truthful during his testimony.

-7-

Further, it was not necessary that the jury believe that Nelson employed a belt while striking the child; his admission that he had spanked the child with his hand, given the severe bruising on the child, was sufficient to establish intent to harm the child.

Rarely does a criminally accused person elucidate his intent to commit a crime in a cogent and clear manner. Rather, intent is inferred from circumstances and actions. As the Supreme Court stated in reversing this Court's finding of insufficient evidence of intent in a criminal abuse case:

> Courts are to direct verdicts of not guilty only in the most drastic situations where the Commonwealth has failed to produce proof whereby reasonable jurors could conclude beyond a reasonable doubt that a defendant is guilty. *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991). Also, as clearly stated in *Benham*, in a motion for directed verdict, "the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth." *Id*. at 187.

> In assessing evidence as to sufficient proof of intent in criminal cases, the requisite intent may be determined from surrounding circumstances. All elements of a crime, including intent, can be proven by circumstantial evidence. *Matheney v. Commonwealth*, 191 S.W.3d 599 (Ky. 2006); *Baker v. Commonwealth*, 307 S.W.2d 773 (Ky. 1957); *Denham v. Commonwealth*, 239 Ky. 771, 40 S.W.2d 384 (1937); *Commonwealth v. Wolford*, 4 S.W.3d 534 (Ky. 1999). Hardly is the Commonwealth ever fortunate enough to present direct proof as to the thought process in a defendant's mind.

*Commonwealth v. O'Conner*, 372 S.W.3d 855, 857 (Ky. 2012), *as modified on denial of reh'g* (Aug. 23, 2012).

There was clearly sufficient evidence of intent evident in the injuries suffered by the child so as to establish that the blows were inflicted upon him in a manner that a reasonable juror could determine displayed intent to harm the child. The trial court did not err in refusing to direct a verdict because of failure to prove intent.

Nelson also alleges that there was insufficient proof of cruel punishment. Again, this is a jury question as to whether the injuries depicted in the photographs were sufficient to prove the child was subjected to cruel punishment and so find they did. "It is the jury's function to determine whether the amount of force used during a spanking constitutes cruel punishment." *Canler v. Commonwealth*, 870 S.W.2d 219, 222 (Ky. 1994).

The Commonwealth offered not only the photographic evidence of the child's extensive bruising, but medical evidence that the bruising was so deep and substantial as to appear on a skeletal survey, which is a series of x-rays. The trial court did not err in failing to enter a directed verdict as the Commonwealth offered sufficient proof of cruel punishment.

We affirm.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Aaron Reed Baker
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Emily Bedelle Lucas
Assistant Attorney General
Frankfort, Kentucky