# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  DECEMBER 19, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0410-MR

ALLISON SIMPSON                                                                     APPELLANT

V.

ON APPEAL FROM CHRISTIAN CIRCUIT COURT
HONORABLE JOHN L. ATKINS, JUDGE
NO. 19-CR-00247

COMMONWEALTH OF KENTUCKY                                             APPELLEE

AND

2023-SC-0443-TG

NINA MORGAN                                                                         APPELLANT

V.

ON APPEAL FROM CHRISTIAN CIRCUIT COURT
HONORABLE JOHN L. ATKINS, JUDGE
NO. 19-CR-00764

COMMONWEALTH OF KENTUCKY                                             APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Allison Simpson was convicted of 12 counts of first-degree criminal abuse, 3 counts of second-degree criminal abuse, and 12 counts of third-degree criminal abuse for her actions as a caregiver at a daycare in Hopkinsville, Kentucky and sentenced to 20 years' imprisonment.  She appeals

her conviction as a matter of right.[1]  Tried with Simpson was Nina Morgan, a fellow caregiver at the same daycare, who was found guilty of third-degree criminal abuse and sentenced to 12 months' imprisonment.  We accepted transfer of Morgan's appeals and because of significant overlapping issues address both in this opinion.  Because no error asserted compels reversal, we affirm the trial court.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Simpson and Morgan were employees of the United Methodist Church Daycare in Hopkinsville.  Simpson was the primary teacher in the nursery, the room where infants one-year-old or less were placed.  Morgan, Simpson's great aunt, worked alongside her niece in the nursery.  Around 2018, other workers at the daycare grew concerned primarily with Simpson's treatment of the children.  They reported that Simpson would bounce the children so hard in the bouncy chairs that the infants' heads "almost hit[ ] the floor" and would "come off the chair itself and come back down and bounce."  Simpson was accused of holding an infant's head "between her knees" until the infant "gasped for air" and would regularly throw children down onto a bed or onto the floor when she was upset with the child.  The other workers also recalled Simpson's habit of excessively patting the infants, hitting them so hard it was described as "beating 'em" and able to be heard through the air vents of the daycare.

---

[1] KY. CONST. § 110(2)(b).

2

After attempts to report Simpson's behavior to daycare administrators were unsuccessful in resolving the matter, several workers informed parents of what was occurring. After the parents were able to view video of the treatment, they went to the police and county attorney. In response, police seized 40 days of video footage maintained by the daycare, comprising some 1,100 hours of recordings. After review of the footage, Simpson was indicted on 30 counts of first-degree criminal abuse and Morgan on 2 counts of first-degree criminal abuse.

Simpson and Morgan were tried together. Testimony about the abuse came primarily from the parents of the children. The admissibility of this testimony constitutes a major portion of their appeal and is discussed in greater detail below. Interestingly, the Commonwealth did not introduce proof that any of the infants suffered injuries.

After deliberation, the jury found Simpson guilty of 12 counts of first-degree criminal abuse, 3 counts of second-degree criminal abuse, and 12 counts of third-degree criminal abuse. She was found not guilty of three counts of first-degree criminal abuse. Morgan was found guilty of one count of third-degree criminal abuse and not guilty of the remaining count.

The jury struggled to come to an agreement on sentences for the pair. During the misdemeanor penalty phase, the jury was deadlocked as to the sentence for Morgan. After asking the trial court for guidance on what would happen if it couldn't agree, the court responded "[t]hen it's a hung jury and if you can't reach a verdict the court will impose the sentence. That's right?" The

3

jury was unable to reach a verdict and the court imposed the maximum sentence of 12-months imprisonment. When the jury reconvened to determine Simpson's penalty for the felony counts, they again found themselves deadlocked on the first-degree charges. Ultimately, the court was again tasked with setting a sentence and gave Simpson a total of 20-years' imprisonment. Simpson appeals her sentence as a matter of right. Morgan pursued a direct appeal to the Court of Appeals which recommended transfer to this Court, which we accepted.

During jury deliberations, a staff member of the Department of Public Advocacy observed the trial judge leave the bench to speak with members of the victims' families. The exact content of the conversation is unknown, but the witness stated the judged opined on the need for cameras in daycare facilities. When this conversation was discovered by the defense six weeks later, Morgan and two defendants in a related case filed a motion for the judge's recusal, which was denied. Subsequently, the matter went before then Chief Justice John Minton who disqualified the trial judge from further proceedings related to the daycare and appointed a special judge. Based on this disqualification, Morgan filed a CR[2] 60.02 motion to set aside her conviction and/or sentence based on the alleged bias of the original judge. That motion was denied. Morgan appealed the denial to the Court of Appeals and that appeal along with her direct appeal were consolidated and transferred

---

[2] Kentucky Rules of Civil Procedure.

to the Supreme Court. We address Simpson and Morgan's direct appeals and Morgan's CR 60.02 appeal in this opinion.

## II.   ANALYSIS

Simpson and Morgan present 6 overarching issues for our review as well as numerous sub-issues. Errors commonly asserted by Simpson and Morgan are (1) errors arising from testimony presented at trial; (2) insufficient evidence; and (3) error caused by the trial judge's comments to the jury. Simpson individually raises additional concerns: (1) a unanimity error caused by the jury instructions; (2) incorrect testimony regarding her parole eligibility; and (3) cumulative error. Morgan has also appealed denial of her CR 60.02 motion seeking retroactive disqualification of the trial judge.

### A. Question and Testimony Issues.

Simpson and Morgan first present us with a variety of alleged errors based on testimony adduced at trial. Collectively, the Appellants allege (1) error arising from impermissible interpretation of video and (2) an improper question relating to authorization for the abuse. Simpson alone raises other issues: (3) the presentation of prejudicial victim impact testimony during trial; (4) improper lay opinion testimony; and (5) pervasive improper questions by the Commonwealth. We address each in turn.

However, before we begin our analysis, we feel compelled to make a brief note about the importance of the preservation statement we require in briefing before the appellate courts. RAP[3] 32(A)(4) requires,

> An argument conforming to the statement of points and authorities, with ample references to the specific location in the record and citations of authority pertinent to each issue of law and **which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner**.

(Emphasis added). While Simpson and Morgan did include the requisite statement prior to each of the arguments, their references to the record were in some instances incomplete and in others totally irrelevant to the issue being raised. We do not expect minute detail in these sections, but we do expect litigants to make their case, which includes directing the Court to the specific instances of preservation relevant to the issue. We address the preservation issues in this appeal more specifically in the sections below, but we implore all parties to take seriously our appellate rules in future briefs, lest they be subject to our power to strike pursuant to RAP 31(H)(1).

1. <u>Impermissible video interpretation was harmless error.</u>

Simpson and Morgan first argue that the trial court erred in permitting extensive narration of video played at trial by parent witnesses. Although both defendants lodged some objections to the testimony of the parents, with one exception the statements were not objected to as improper narration. The

---

[3] Kentucky Rules of Appellate Procedure.

continuing objection, relating specifically to the Commonwealth's question about authorization, discussed *infra*, was not sufficient to preserve objections on the basis asserted here. We will review the statement properly objected to for harmless error and the remainder of the statements for palpable error. Because any error caused by the testimony was either harmless or did not rise to the level of creating a manifest injustice, we decline to reverse Simpson's or Morgan's convictions on this basis.

While a witness may narrate video footage under some circumstances, witnesses may not interpret the footage or offer an opinion of the footage. *Boyd v. Commonwealth*, 439 S.W.3d 126, 131 (Ky. 2014).

> [T]he proper query for such narrative testimony was whether it complied with KRE 701 and KRE 602. KRE 701 limits testimony by a witness not testifying as an expert to matters "(a) [r]ationally based on the perception of the witness," and "(b) [h]elpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Moreover, KRE 602 further refines the scope of permissible lay opinion testimony, limiting it to matters of which the witness has personal knowledge.

*Cuzick v. Commonwealth*, 276 S.W.3d 260, 265 (Ky. 2009) (citing *Mills v. Commonwealth*, 996 S.W.2d 473 (Ky. 1999)). Put more succinctly, a witness may identify individuals or places in video footage, but only if the witness has personal knowledge of the events. *See Boyd*, 439 S.W.3d at 131-32 (holding witness testimony improper where they "testified to events that they did not perceive in real time[]").

The primary issue with the testimony of all the parents is that they were asked to comment upon events about which they had no personal knowledge.

7

To take the example of the properly objected to statement, in response to the Commonwealth asking her to describe the video clip just played, the parent witness stated she "saw that . . . [her child] did not want to take a bottle and [Simpson] is very frustrated and angry with him." Most of the other parent witnesses made similar statements describing what they saw occurring in the video. Of course, none of the parents were present in the daycare room during any of the allegedly abusive incidents and all were only made aware of the specific actions taken by Simpson and Morgan after viewing the recordings. In this context, while the parents would properly have been allowed to identify Simpson, Morgan, their children, and any elements of the room they had personally observed, they should not have been allowed to describe what was happening in the videos. The trial judge erred in permitting them to go beyond the limits of their personal knowledge.

Although the testimony was error, we hold it was harmless. We have previously opined that showing the video to the jury is curative of errors of this type. *See Boyd*, 439 S.W.3d at 132 ("[T]he error was harmless because the jurors were watching the video and were in a position to interpret the security footage independently from the testimony, which provides fair assurance that the judgment was not 'substantially swayed by the error.'" (quoting *Winstead v. Commonwealth*, 283 S.W.3d 678, 688 (Ky. 2009))). Here, the jurors were shown the video clips, sometimes multiple times, and the clips were entered into evidence for the jurors to peruse during deliberations. Given that the jurors were ultimately able to assess the content of the videos independently of

8

the witnesses' improper interpretation, any error was harmless and, by implication, would also not rise to the level of palpable error.

 2. The question regarding authorization was not improper.

 Both Simpson and Morgan argue the form of a question asked repeatedly by the Commonwealth of all the parent witnesses constitutes reversible error. Although minor variations occurred, the question was generally formulated as: "did you [the witness] approve or authorize your child to be treated in that manner." The question was asked after a video clip of a defendant's interaction with a victim was played. Simpson objected to the form of this question by continuing objection which was acknowledged by the trial judge and Morgan objected with regard to the relevant witness. Accordingly, we review the issue for harmless error. *Ordway v. Commonwealth*, 391 S.W.3d 762, 774 (Ky. 2013) ("[P]reserved evidentiary and other non-constitutional errors will be deemed harmless . . . if we can say with fair assurance that the judgment was not substantially swayed by the error." (quoting *Brown v. Commonwealth*, 313 S.W.3d 577, 595 (Ky. 2010) (internal citations omitted))). Because the Commonwealth's question clears the very low standard for relevancy in KRE[4] 401, we hold no error occurred in its asking.

 KRE 401 defines "relevant evidence" as "evidence having **any** tendency to make the existence of **any** fact that is of consequence to the determination of the action more probable or less probable than it would be without the

---

 [4] Kentucky Rules of Evidence.

9

evidence." (Emphasis added). "This standard is powerfully inclusionary and is met upon a showing of minimal probativeness." *Roe v. Commonwealth*, 493 S.W.3d 814, 820 (Ky. 2015). If evidence is relevant, it "is admissible," KRE 402, unless "its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403.

Simpson and Morgan argue the question is irrelevant because neither defendant asserted they were acting under the direction of the parents. Also, that argument would not act as a defense because KRS[5] 503.110(1), which permits the use of physical force by persons caring for minors, has an exception precisely for behavior that constitutes criminal abuse. KRS 503.110(1)(b) (providing justification exists where "[t]he force that is used is not designed to cause or known to create a substantial risk of causing death, serious physical injury, disfigurement, extreme pain, or extreme mental distress[]"). However, we hold the evidence did satisfy KRE 401. While true that parental permission would not constitute a statutory defense to criminal abuse, the question of authorization would still reasonably have been one explanation as to why the defendants were treating their infant wards in an allegedly abusive manner, and one that may have weighed heavily in the mind of a juror. The Commonwealth anticipated this potential line of defense and

---

[5] Kentucky Revised Statutes.

10

sought to undermine it in its case in chief. *Cf. Bales v. Commonwealth*, 313 Ky. 272, 274, 231 S.W.2d 61, 62 (1950) ("The Commonwealth had the right to anticipate, under the plea of self defense, that the defendant would attempt to prove the bullets entered the front part of the body of the deceased."); *McPeak v. Commonwealth*, 308 Ky. 29, 35, 213 S.W.2d 447, 450 (1948) ("The Commonwealth could not anticipate with reasonable assurance that the defense would not claim the automobile belonged to appellant or one of his accomplices; that being true, it was competent for the Commonwealth to introduce the photograph of the real owner of the automobile, to show the jury that the owner was not the defendant on trial or either of his accomplices[]"). That the defense ultimately forwent the argument does not then render the Commonwealth's questions unreasonable or irrelevant. The question being probative of a potential line of defense made it relevant under KRE 401.

We also hold the question was not so prejudicial or confusing as to justify exclusion under KRE 403. "Evidence is unfairly prejudicial if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Brown v. Commonwealth*, 313 S.W.3d 577, 619 (Ky. 2010) (citation and internal quotation marks omitted). Defendants suggest the question opened the door to the jurors deciding guilt based on lack of authorization rather than by the elements of the charges. We can discern little danger of that from the question. Although the question was repeated multiple times to each of the parent witnesses, the jurors also would have been aware from the instructions

11

provided to them during deliberations that the question of authorization had no

legal bearing on their determination.  And although the Commonwealth asked

the question, it did not then assert during its argument that the lack of

authorization compelled guilt.  Because the question was not unduly

prejudicial, confusing, or misleading, the trial court did not err in overruling

Simpson's and Morgan's objections.

3. Victim Impact Testimony.

We next address whether some of the testimony of the parents

constitutes impermissible victim impact testimony.  Simpson argues that

statements such as: "he's a little baby. He could have been hurt.  We still don't

know if he's hurt"; "[h]e was a little different than he is now, but he's very

resilient"; and responding "[y]es, [i]ncredibly" to whether the child's "demeanor

changed after being removed from the daycare[]" go to victim impact and

prejudiced the jury against her.

However, Simpson's discussion of preservation for this portion of her

argument falls woefully short of the requirements of our appellate rules.  As

discussed earlier, RAP 32(A)(4) requires, "at the beginning of the argument a

statement with reference to the record showing whether the issue was properly

preserved for review and, if so, in what manner."  Failure to do so can result in

the offending portion to be stricken pursuant to RAP 31(H)(1).  Here, Simpson

directs us to three time stamps,[6] none of which contain an objection to

---

[6] All of which challenge the requirement of specificity in RAP(A)(4) as well.

12

testimony on the same grounds now raised on appeal. The continuing objection, made only in opposition to the Commonwealth's use of the authorization question, discussed *supra*, does nothing to preserve this victim impact argument. While we have been indulgent of Simpson's liberal interpretation of our preservation statement requirement as it relates to other arguments in her brief, in this instance she has strayed too far. Accordingly, we exercise our authority under RAP 31(H)(4) and strike this portion of her argument.

4. <u>Improper Opinion from Lay Witnesses.</u>

Simpson next argues that her trial was tainted by the admission of improper lay witness opinion testimony in violation of KRE 701 and 702. This issue is preserved through an oral motion in limine to prevent testimony "on expert subjects, PTSD, anything of that nature" and objections to three instances of testimony from the parents responding to a question why they did not approve of an action taken by Simpson: (1) "[h]e's not fully developed, could've hurt him"; (2) "I know that that can seriously injure him"; and (3) "I am concerned about how far his head is bouncing off of the bouncer. With his brain still being developing it could result in shaken baby syndrome." To the extent Simpson discusses other instances during the legal analysis of this matter in her brief, those instances either lack citation to the record in contravention of RAP 32(A)(4) or Simpson did not contemporaneously object,

nor did she seek palpable error review.[7]  Accordingly, we will address only those instances raised in accordance with our appellate rules.

KRE 701 provides,

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are:

(a) Rationally based on the perception of the witness;

(b) Helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and

(c) Not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

KRE 702 sets forth the testimony that can be provided by one qualified as an expert, which none of the parents were.  "The degree to which a witness may give an opinion, of course, is predicated in part upon whether and the extent to which the witness has sufficient life experiences that would permit making a judgment as to the matter involved." *Hunt v. Commonwealth*, 304 S.W.3d 15, 35 (Ky. 2009) (quoting *Mondie v. Commonwealth*, 158 S.W.3d 203, 212 (Ky. 2005)).  Thus, a foster parent could offer lay testimony as to the "common behaviors of autistic[] children specifically related to N.V.'s autistic behaviors" since she had extensive personal experience with the child.  *Richmond v. Commonwealth*, 534 S.W.3d 228, 234 (Ky. 2017).

---

[7] The examples provided outside of her preservation statement, e.g. "[y]anking an arm up like that on a 1 ½ or I'm sorry not even yet . . . a 1-year-old can cause serious injury to them", do not, to us, appear to be covered under the motion in limine as they are not statements on "expert subjects, PTSD, [or] anything of that nature"—in other words, testimony more properly subject KRE 702.  Rather, for reasons made clearer in the body of our discussion, the statements are permissible lay observations made by the parents of the children.

Applying this standard to the statements at issue, we hold (1) and (2) were not impermissible lay opinion and that while (3) was impermissible, the error was cured by the judge's admonition to the jury. Statement 1 clearly satisfies KRE 701. That an individual's child is not fully developed and that hard blows to the child could hurt him is knowledge well within the life experience of a parent. Further, it was based upon the witness's perception of what occurred in the daycare as well as their day-to-day experience with the child, was helpful to the jury's understanding of what was happening to the child and why it may have been harmful, and it was not so technical as to fall under KRE 702. No error came from allowing the statement before the jury.

Statement 2 presents a close case, but still satisfies KRE 701. That Simpson's acts could "seriously injure" a child approaches the need for expert qualification, but does not meet it. To differentiate between something injurious and something seriously injuriously may call upon a more specialized knowledgebase, or it may reflect a less technical feeling that the resultant injury would be of greater severity than a bruise or ache. The latter interpretation fits here. The parent could testify that Simpson's action could cause serious injury because no specialized or technical concept of a serious injury existed. Had the parent opined on the likelihood of a broken bone or of a dislocated shoulder, perhaps we would reconsider, but a parent's assessment of the severity of their child's injury is lay opinion testimony permitted under our rule. As before, the statement was based on the parent's rational

15

perception, was helpful to the jury, and was not otherwise excluded by KRE 702.

Finally, we address the statement regarding shaken baby syndrome. As the trial court determined, this statement did constitute a violation of KRE 701. An admonition was properly provided to the jury instructing it to ignore "any reference to shaken baby syndrome" but acknowledging that "the witness is entitled to express her personal opinion that the behavior exhibited in the video regarding excessive shaking of her child causes her concern." Simpson did not move for a mistrial following the admonition. We have "long held that an admonition is usually sufficient to cure an erroneous admission of evidence, and there is a presumption that the jury will heed such an admonition." *Lang v. Commonwealth*, 556 S.W.3d 584, 594 (Ky. 2018) (quoting *Matthews v. Commonwealth*, 163 S.W.3d 11, 17 (Ky. 2005)).

No evidence has been presented to overcome that presumption here; the jury would have been able to follow the admonition, the single, passing mention of shaken baby syndrome was not devastating to Simpson, and the question had a factual basis and was not inflammatory or highly prejudicial. *See Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003) ("There are only two circumstances in which the presumptive efficacy of an admonition falters: (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition and there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant; or (2) when the question was asked without a factual basis and was 'inflammatory' or

16

'highly prejudicial.'" (internal citation omitted)). Furthermore, "failure to move for a mistrial following an objection and an admonition from the court indicates that satisfactory relief was granted." *Howell v. Commonwealth*, 163 S.W.3d 442, 447 (Ky. 2005) (quoting *West v. Commonwealth*, 780 S.W.2d 600, 602 (Ky. 1989)). Because the admonition cured the defect, and because the other statements were not error, Simpson is not entitled to reversal on this claim.

5. Pervasive Improper Questions.

Finally, Simpson argues that throughout the proceedings "[t]he Commonwealth deployed a tactic of irrelevant, leading, inflammatory, and narrative questioning for the purpose of prejudicing the jury with improper emotional, speculative, ultimate issue testimony." Because this omnibus allegation of error does little to direct us in our review—to say nothing of preservation issues—we address only those specific examples she addresses in this section of her brief, ignoring issues duplicative of those already resolved. Specifically, we address the use of terms such as "striking," "throw[ing]," "push[ing]," and "shak[ing]" during the Commonwealth's questioning. Although Appellants did not object to every instance of the Commonwealth's use of such phrasing, we need not parse the standards of review for each instance because we hold the phrasing was not error.

"[A] witness generally cannot testify to conclusions of law." *Tamme v. Commonwealth*, 973 S.W.2d 13, 32 (Ky. 1998) (citing *Gibson v. Crawford*, 259 Ky. 708, 722, 83 S.W.2d 1, 7 (1935)). Thus, a prosecutor cannot ask a witness about a murder in most circumstances. *See Simpson v. Commonwealth*, 653

17

S.W.3d 855, 866-67 (Ky. 2022) (holding the question, "In fact, did he seem to be phased by the fact that he just murdered two people?" to be improper, but cured by admonition). However, the questions as formulated here did not speak to a conclusion of law, they were not terms of art but rather descriptors of what was seen on the video footage from the daycare. Criminal abuse does not hinge upon whether an individual was "struck" or "shaken," but rather whether or not those actions:

> (a) Cause[d] serious physical injury; or
>
> (b) Place[d] him in a situation that may cause him serious physical injury; or
>
> (c) Cause[d] torture, cruel confinement or cruel punishment[.]

KRS §§ 508.100-508.120. The question did not speak to the result of the action, which may or may not have been criminal abuse, but only described the action itself. Indeed, we are at pains to imagine an alternate phrasing that would not sound obtusely anodyne and removed from the evidence. Accordingly, the Commonwealth's phrasing was not error.

### B. The Evidence was Sufficient.

Simpson and Morgan assert that the Commonwealth did not present sufficient evidence to convict them of criminal abuse. "[A]n evaluation of the sufficiency of evidence depends on 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Webb v. Commonwealth*, 387 S.W.3d 319, 331(Ky. 2012) (quoting *Beaumont v. Commonwealth*, 295 S.W.3d 60, 68 (Ky. 2009)). "There must be evidence of

18

substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence." *Id.* (citing *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)). The Appellants contend the Commonwealth failed to prove beyond a reasonable doubt that they: (1) abused the children; (2) placed the children in a situation which may have caused serious physical injury; and (3) subjected them to cruel punishment. We discuss the evidence against each Appellant in turn.

1. Allison Simpson

Simpson was convicted of 12 counts of criminal abuse in the first degree, 3 counts of criminal abuse in the second degree, and 12 counts of criminal abuse in the third degree.

Under KRS 508.100(1), a person is guilty of criminal abuse in the first degree when she:

> **[I]ntentionally** abuses another person or permits another person of whom [she] has actual custody to be abused and thereby:
>
> > (a) Causes serious physical injury; or
> >
> > (b) Places him in a situation that may cause him serious physical injury; or
> >
> > (c) Causes torture, cruel confinement or cruel punishment;
>
> to a person twelve (12) years of age or less, or who is physically helpless or mentally helpless.

19

(Emphasis added).[8] The children in all of Simpson's convictions were infants and no one argues they do not satisfy KRS 508.100 requirement that the person be twelve years of age or less. Simpson argues the Commonwealth failed to prove that she intentionally, wantonly, or recklessly abused any children. However, the Commonwealth presented sufficient circumstantial evidence that the children suffered physical abuse and "[i]t has long been the law that the Commonwealth can prove all the elements of a crime by circumstantial evidence." *Commonwealth v. Goss*, 428 S.W.3d 619, 625 (Ky. 2014) (citing *Commonwealth v. O'Connor*, 372 S.W.3d 855, 857 (Ky. 2012)).

Abuse is defined as:

[T]he infliction of physical pain, injury, or mental injury, or the deprivation of services by a person which are necessary to maintain the health and welfare of a person, or a situation in which an adult, living alone, is unable to provide or obtain for himself the services which are necessary to maintain his health or welfare.

KRS 508.090(1). Here, the children were too young to testify about whether they suffered any pain. So, the Commonwealth presented video from the daycare surveillance camera to have the jury determine whether the children suffered any physical pain. The Commonwealth presented ample video evidence for the jury to see that the infants suffered physical pain from the actions of Simpson, including striking the infants' bottoms,

---

[8] Criminal abuse in the second degree requires the person acted wantonly and criminal abuse in the third degree requires the person acted recklessly. KRS §§ 508.110-508.120.

20

bouncing them too roughly in bouncing chairs, pulling their limbs, and dropping them into cribs.

The Commonwealth also presented sufficient evidence that Simpson placed the children in situations that may cause them serious physical injury. "Serious physical injury" has an extensive definition and for a child twelve (12) years of age or less it can include and is not limited to the following:

(a) Bruising near the eyes, or on the head, neck, or lower back overlying the kidneys;

(b) Any bruising severe enough to cause underlying muscle damage as determined by elevated creatine kinase levels in the blood;

(c) Any bruising or soft tissue injury to the genitals that affects the ability to urinate or defecate;

(d) Any testicular injury sufficient to put fertility at risk;

(e) Any burn near the eyes or involving the mouth, airway, or esophagus;

(f) Any burn deep enough to leave scarring or dysfunction of the body;

(g) Any burn requiring hospitalization, debridement in the operating room, IV fluids, intubation, or admission to a hospital's intensive care unit;

(h) Rib fracture;

(i) Scapula or sternum fractures;

(j) Any broken bone that requires surgery;

(k) Head injuries that result in intracranial bleeding, skull fracture, or brain injury;

(l) A concussion that results in the child becoming limp, unresponsive, or results in seizure activity;

21

(m) Abdominal injuries that indicate internal organ damage regardless of whether surgery is required;

(n) Any injury requiring surgery;

(o) Any injury that requires a blood transfusion; and

(p) Any injury requiring admission to a hospital's critical care unit;

KRS 500.080(18). Simpson conceded that rocking a child as hard as she did could hurt them. She also admitted that she was aware that she should not grab a child by the arm and pull because it could seriously hurt the child. Criminal abuse does not require that the person suffer serious physical injury but that the person was placed in a situation that *may* cause him serious physical injury. Simpson argues the Commonwealth submitted no evidence of serious physical injury, but the Commonwealth did not need to submit such evidence. The Commonwealth did in fact present evidence that the children were in situations that could have caused serious physical injury, such as bruising of the head, and Simpson acknowledged that her actions put those children in those seriously harmful situations.

The Commonwealth also presented sufficient evidence that Simpson subjected the children to cruel punishment. "The courts have experienced little difficult in determining what constitutes cruel punishment under the terms as found in Section 17 of the Kentucky Constitution as well as the Eighth Amendment to the United States Constitution." *Canler v. Commonwealth*, 870 S.w.2d 219, 222 (Ky. 1994). This Court has "provided cruel punishment to be that punishment which shocks the conscience and violates the principles of fundamental fairness." *Id.* (citing *Workman v. Commonwealth*, 429 S.W.2d 374

22

(Ky. 1968)).  The *Canler* Court held that "it is the jury's function to determine whether the amount of force used during a spanking constitutes cruel punishment."  870 S.W.2d at 222.

Further, this Court has held that hitting a child with a wire coat hanger even though the blows inflicted did not result in medical treatment or marks were sufficient to sustain charges of criminal abuse because "the children testified to circumstances proving the nature of the beatings to have been cruel and indiscriminate."  *Stoker v. Commonwealth*, 828 S.W.2d 619, 625 (Ky. 1992).  Once again, in this case, the children could not testify to the nature of Simpson's actions, but the security footage provided the jury the ability to assess whether the amount of force used was cruel punishment.  The footage presented to the jury showed Simpson repeatedly hitting the infants with aggressive force not authorized by the infants' parents.  The jury did not have to rely on testimony from the children's recall of the events—impossible in any event—because they could observe Simpson's actions directly as they unfolded on video.  The Commonwealth through the video footage presented sufficient evidence for the jury to accomplish its function in determining whether the amount of force used by Simpson constituted cruel punishment.

Therefore, the Commonwealth presented sufficient evidence to prove that Simpson committed the criminal abuse of which she was convicted by providing testimony and security footage of Simpson engaging in these acts that abused these infants, placed them in situations that could have caused them serious physical injury, and subjected them to cruel punishment.

23

2. <u>Nina Morgan</u>

Morgan was convicted of one count of criminal abuse in the third degree. Under KRS 508.120(1) a person is guilty of criminal abuse in the third degree when she:

> **[R]ecklessly** abuses another person or permits another person of whom [she] has actual custody to be abused and thereby:
>
> > (a) Causes serious physical injury; or
> >
> > (b) Places him in a situation that may cause him serious physical injury; or
> >
> > (c) Causes torture, cruel confinement or cruel punishment;
>
> to a person twelve (12) years of age or less, or who is physically helpless or mentally helpless.

(Emphasis added). The child involved in Morgan's conviction was an infant that Morgan bounced too hard in a baby bouncer. The jury was shown video from the daycare surveillance camera of Morgan bouncing the child in the bouncer. The child's mother testified that from the video it appeared Morgan shoved the pacifier in the child's mouth and that Morgan had bounced him around like a rag doll. Morgan also acknowledged that bouncing an infant so hard may result in physical injury.

Applying the same abuse definition under KRS 508.090(1) to Morgan's actions we hold that the Commonwealth presented sufficient evidence to prove that she inflicted physical pain on the infant. Morgan conceded that bouncing an infant hard may result in a physical injury and the jury can infer based on the security footage whether her actions caused physical injury to the infant.

24

The Commonwealth also presented sufficient evidence for a rational trier of fact to find that Morgan placed that infant in a situation that could have caused a serious physical injury. She knew that bouncing an infant too hard could cause injury and the jury saw how she aggressively bounced the infant. The jury could ascertain itself how that situation could have resulted in that infant suffering a serious physical injury to his head.

Lastly, the Commonwealth also presented sufficient evidence that Morgan subjected the infant to cruel punishment. The Commonwealth through the security footage gave the jury the ability to accomplish its function in determining whether the amount of force used by Morgan constituted cruel punishment. The jury could see Morgan's actions and see how recklessly she treated the infant in his bouncer.

Therefore, the Commonwealth presented sufficient evidence to prove that Morgan committed the criminal abuse of which she was convicted by providing testimony and security footage of her engaging in these acts that abused the infant, placed him in a situation that could have caused him serious physical injury, and subjected him to cruel punishment.

## C. *No Unanimity Error.*

Simpson asserts that the combination instructions presented to the jury violated her right to a unanimous verdict. The jury instructions at issue presented two alternative theories for the jury to find Simpson guilty of criminal abuse when she either: (1) subjected the children to cruel punishment or (2) she placed the children in a situation which may have caused serious

25

physical injury. Simpson argues the jury instructions violated her right to a unanimous verdict because the Commonwealth failed to produce evidence that supported either theory. As previously discussed, the Commonwealth produced sufficient evidence to support a conviction for the Appellants under either theory.[9] Therefore, this Court holds no jury unanimity error occurred because the jury instructions were proper combination instructions with evidence presented by the Commonwealth to support a conviction under either theory.

Section 7 of the Kentucky Constitution guarantees that "a defendant cannot be convicted of a criminal offense except by a unanimous verdict." *Miller v. Commonwealth,* 283 S.W.3d 690, 695 (Ky. 2009) (citing KY. CONST. § 7; *Cannon v. Commonwealth,* 291 Ky. 50, 163 S.W.2d 15 (1942); RCr[10] 9.82(1)). "[T]he Commonwealth must introduce evidence sufficient to prove each offense and to differentiate each count from the others, and the jury must be separately instructed on each charged offense." *King v. Commonwealth,* 554 S.W.3d 343, 354 (Ky. 2018) (quoting *Miller v. Commonwealth,* 77 S.W.3d 566, 576 (Ky. 2002)), *overruled on other grounds by Johnson v. Commonwealth,* 676 S.W.3d 405, 417 (Ky. 2023). "[A] trial court is obliged to include some sort of identifying characteristic in each instruction that will require the jury to determine whether it is satisfied from the evidence the existence of facts

---

[9] *See supra* Section II.
[10] Kentucky Rules of Criminal Procedure.

26

proving that each of the separately charged offenses occurred." *Harp v. Commonwealth*, 266 S.W.3d 813, 818 (Ky. 2008).

"[A] general jury verdict based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof[,] violates the requirement of a unanimous verdict." *Johnson v. Commonwealth*, 405 S.W.3d 439, 449 (Ky. 2013), *overruled on other grounds by Johnson*, 676 S.W.3d at 417. However, "[a] 'combination' instruction permitting a conviction of the same offense under either of multiple alternative theories does not deprive a defendant of his right to a unanimous verdict, so long as there is evidence to support a conviction under either theory." *Robinson v. Commonwealth*, 325 S.W.3d 368, 370 (Ky. 2010).

The trial court in this case instructed the jury on two alternative theories of liability for the charged offenses. By way of example, one of those instructions with the two alternative theories that the jury rendered a guilty verdict provided:

> If you did not find the Defendant, Allison Simpson guilty under Instruction No. 10, you will find the Defendant guilty of Criminal Abuse in the Second Degree under this Instruction if, and only, if you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or about December 20, 2018 and before the finding of the Indictment herein, she wantonly abused [P.C.] as seen near the 14:08:28 mark on camera 20;
>
> AND

27

B. That she thereby caused [P.C.] to be:

    1. Subjected to cruel punishment;

    OR

    2. Placed in a situation which may have caused seriously physical injury;

AND

C. That [P.C.] was at that time 12 years of age or less.

The jury does not need to agree on the same theory of the events, so long as, "the conclusion may be justified upon either of two interpretations of the evidence[.]" *Cox v. Commonwealth*, 553 S.W.3d 808, 813 (Ky. 2018). The Appellants argue that these combination instructions made it impossible for the jury to agree on either theory because the Commonwealth failed to present evidence that showed that any children were "subjected to cruel punishment" or "placed in a situation which may have caused seriously physical injury." However, as previously discussed, the Commonwealth presented sufficient evidence to support both theories. Therefore, this Court holds no jury unanimity error occurred because the jury was presented with proper combination instructions.

### D. *No Manifest Injustice from Incorrect Parole Eligibility Testimony.*

Simpson next argues the Commonwealth erred during the penalty phase by incorrectly informing the jury that Simpson would need to serve 85% of her sentence on the first-degree criminal abuse charges before she would be parole eligible. Simpson did not object to this testimony at trial (and, in fact, repeated

28

the misconception) and therefore asks that we review the statements for palpable error pursuant to RCr 10.26. "The rule's requirement of manifest injustice requires showing . . . [a] probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Faughn v. Commonwealth*, 694 S.W.3d 339, 349 (Ky. 2024) (quoting *Young v. Commonwealth*, 426 S.W.3d 577, 584 (Ky. 2014)) (internal citations and quotation marks omitted) (alterations in original).

Simpson directs us to the testimony of Tim Simming from the Office of Probation and Parole for the offending statements. On questioning from the Commonwealth, Simming stated that first-degree criminal abuse was a class C felony and he "believe[d] it's an 85% offense." Upon further questioning, Simming calculated the time to parole eligibility for sentences of 5 and 10 years at 4¼ years and 8½ years, respectively. He further opined that as a result of the 85% requirement of the class C felony, Simpson would not be eligible at 20% for her class D charges. The Commonwealth entered the eligibility chart reflecting the 85% requirement into evidence. Simpson's attorney also asked questions of Simming that accepted 85% as the correct parole eligibility timeframe, e.g.:

> Defense: So, whatever the jury gives her she's going to serve it, 85% of it?
>
> Simming: Yes.
>
> Defense: Okay. And there's no getting around that, is there?
>
> Simming: No, sir.

29

As an initial point, Simpson is correct that as the law stood during her trial, first-degree criminal abuse is not subject to the 85% requirement of KRS 439.3401(3).[11] As we observed in *Mason v. Commonwealth*, that first-degree criminal abuse is not subject to the 85% requirement was the result of a "peculiar decision" of the legislature to classify the offense as violent, but not include it among those violent offenses subject to more onerous parole eligibility requirements. 331 S.W.3d 610, 628 (Ky. 2011). Not being aware of this wrinkle, Simming was misled by first-degree criminal abuse's status as violent and incorrectly believed Simpson would be subject to the longer mandatory time in prison. While this was error, we do not believe the error rose to the level of manifest injustice.

There are several factors that lead to this conclusion. First, ultimately Simpson's sentence was not influenced by the recommendation of the jury because the jury failed to reach a consensus on the class-C charges. Having failed to do so, the sentencing determination was wholly in the hands of the trial judge who did not appear to consider parole eligibility when he set Simpson's sentence. Second, Simpson's own attorney was part of disseminating the erroneous information. While we do not believe this act invited the issue or constitutes waiver (since the Commonwealth and its

---

[11] One month after Simpson's trial, the General Assembly passed Kami's Law which amended KRS 508.100 to provide, "Criminal abuse in the first degree is a Class C felony unless the victim is under twelve (12) years old, in which case it is a Class B felony." KRS 508.100(2). Future offenders convicted of the same acts as Simpson would thereby be subject to the 85% requirement of KRS 439.3401(3).

30

witness introduced the error and since one might reasonably interpret the perpetuation of the error as canny trial strategy, as discussed below), the fact that Simpson not only failed to object but also participated in the error undermines any notion that a manifest injustice occurred. And, finally, Simpson cannot say that the error worked to her detriment. Indeed, that the jury mistakenly believed that Simpson would be forced to serve more time than actually required likely would have had the effect of shortening the overall sentence, so as to reduce mandatory prison time. Of course, since the jurors failed to agree on a sentence recommendation, we can never be sure what effect, if any, the error had on their deliberation. Taken together, we hold the error failed to create such manifest injustice as to require reversal of Simpson's sentence.

### E. *The Judge's Comments to the Jury do not Merit Reversal.*

Simpson and Morgan argue the trial court violated RCr 9.57 when he informed the jury that he would impose a sentence if the jury could not reach an agreement. The trial court did not violate RCr 9.57 because he did not instruct the jury on the desirability of reaching a verdict but instead informed the jury that if they could not reach a sentence then the court would impose one as authorized under KRS 532.055(4). However, the trial judge erred because KRS 532.055(4) applies to felony cases and at the time of the judge's comment, the jury was deliberating only on the misdemeanor convictions.

RCr 9.57 states:

(1) If a jury reports to a court that it is unable to reach a verdict and the court determines further deliberations may be useful, the

31

court shall not give any instruction regarding the desirability of reaching a verdict other than one which contains only the following elements:

(a) in order to return a verdict, each juror must agree to that verdict;

(b) jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(c) each juror must decide the case, but only after an impartial consideration of the evidence with the other jurors;

(d) in the course of deliberations, a juror should not hesitate to reexamine his or her own views and change his or her opinion if convinced it is erroneous; and

(e) no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of other jurors, or for the mere purpose of returning a verdict.

(2) The Court shall not poll the jury before a verdict is returned.

The goal of RCr 9.57—commonly called an "*Allen* charge" — is to encourage a jury to continue deliberations after it reported itself deadlocked and not force a verdict. *Wright v. Commonwealth*, 590 S.W.3d 255, 263-64 (Ky. 2019) (citing *Allen v. United States*, 164 U.S. 492 (1896)). "[W]e have long held that statements which merely impress upon the jury the propriety and importance of coming to an agreement do not rise to the level of reversible error." *Wright*, 590 S.W.3d at 263 (Ky. 2019) (quoting *Commonwealth v. Mitchell*, 943 S.W.2d 625, 628 (Ky. 1997)) (internal quotations omitted).

During penalty phase deliberations on the misdemeanor convictions for the Appellants, the jury was at an impasse on reaching an agreement on Morgan's sentence and asked the trial court for guidance on what happens if

32

they do not reach an agreement. The trial court in response stated, "it is a hung jury and if you can't reach a verdict then the court will impose a sentence … if you can't reach a verdict, you will have to so report." The jury was then dismissed to continue its deliberations following the trial court's response.

After further deliberation, the jury returned verdicts in all of Simpson's misdemeanor counts giving her six months on each count to run concurrently. The jury did not reach a verdict on Morgan's penalty and the judge read the jury the language from RCr 9.57. Approximately 20 minutes after the judge read the *Allen* charge, the jury returned again and reported it could not reach a verdict on Morgan's sentence. Morgan's defense counsel moved for a mistrial because the trial court's comments improperly influenced the jury by removing any motivation to deliberate in good faith. The judge denied defense counsel's motion and imposed the maximum sentence of 12 months on Morgan.

Appellants argue the trial judge's comment before reading the *Allen* charge disincentivized jurors to deliberate in good faith and consider other options. They argue that the comment did not coerce the jury but still violated the purpose and spirit behind RCr 9.57. We agree with the Appellants that the judge's comment was not coercive but disagree with it violating the purpose and spirit behind RCr 9.57.

In *Mitchell,* this Court held that a judge's comment to the jury that "you need to return a verdict" before providing the RCr 9.57 instruction did not constitute prejudicial error. 943 S.W.2d at 627. The judge's comment came as an "impromptu and perhaps ill-advised response to the jury's inquiry: 'what

33

should we do?'" *Id.* at 627-28. This Court held that the judge's comment was not coercive by looking at "the language of the statement or instruction itself to determine whether it actually forced an agreement or whether it merely forced deliberations resulting in an agreement." *Id.* In this case, the judge's comment was distinguishable because it did not even impress upon the jury the propriety and importance of coming to an agreement. The judge's comment merely addressed the next step if the jury were to report to remain deadlocked. The error is not with the substance of the comment but the timing of when the judge made the comment.

In felony cases, KRS 532.055(4) provides that "[i]n the event that the jury is unable to agree as to the sentence or any portion thereof and so reports to the judge, the judge shall impose the sentence within the range provided elsewhere by law." The Appellants were charged with felony counts of criminal abuse and Simpson was convicted of several of those felony counts. However, Morgan was not convicted of any felony charges. The jury only returned a guilty verdict of a lesser-included misdemeanor offense for Morgan. Therefore, KRS 532.055(4) can only be applicable to Simpson's felony convictions. *See Commonwealth v. Stinnett,* 144 S.W.3d 829, 830 (Ky. 2004) (holding that "once the jury returned its verdict acquitting the defendant of the felony offense and convicting him only of misdemeanors, the case was transformed into a misdemeanor case."); *see also Lopez v. Commonwealth,* 459 S.W.3d 867, 874 (Ky. 2015) (holding under KRS 532.055(4) that after the jurors could not reach

a verdict on two of the remaining convictions, the court was able to render sentences on the felony convictions).

Even though the court's comment was not coercive and did not violate RCr 9.57, KRS 532.055(4) was inapplicable at the time of the court's comment to the jury. The court could not in fact impose a sentence on Morgan if the jury remained deadlocked. Therefore, the court committed reversible error because it imposed a sentence on Morgan after the jury remained deadlocked. For Simpson, however the jury returned sentences on all misdemeanor counts. She was not deprived of the same rights as Morgan because the jury did reach an agreement and the court's comment did not violate RCr 9.57. However, because Morgan has already served her 12-month sentence, reversing and remanding for a new sentence for her would serve no purpose; therefore, the issue is moot.

### F. No Cumulative Error.

Simpson asks us, in the event no single error merits reversal of her conviction, to reverse on the basis of cumulative error. Cumulative error is "the doctrine under which multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair. We have found cumulative error only where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). Here, although we have found error, none of those errors were of significant magnitude that they approached prejudice to Simpson. Where "none of the

35

errors individually raised any real question of prejudice, we have declined to hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice." *Id.* On this basis, Simpson is not entitled to reversal.

### G. *Morgan's Cr 60.02 Motion is Moot.*

Finally, Morgan also appeals the denial of her CR 60.02 motion seeking retroactive recusal of the trial judge and vacatur of her judgment and/or sentence. Simpson is not a party this part of the appeal, although its resolution could potentially have bearing on her case as well. For the reasons expressed below, we find no error in the denial of Morgan's motion.

At the heart of Morgan's CR 60.02 motion is the trial judge's ill-considered decision to interact with the parents of the victims while the jury was deliberating as to Morgan and Simpson's sentences. The judge failed to disclose this conversation at the time and Morgan only discovered its occurrence 6 weeks after it had taken place. Upon motion to then Chief Justice John Minton, the trial judge was disqualified and a special judge appointed, but by that time Morgan had already been sentenced and begun serving her time. As of the rendering of the present opinion, Morgan has fully served her 12-month sentence.

Morgan argues that disqualification of the trial judge only after he pronounced the sentence is unjust and that retroactive recusal is required, not just to the point during sentencing deliberations when the improper conversation occurred, but to the guilt-phase of the trial as well. The standard for retroactive recusal was set forth in *Liljeberg v. Health Services Acquisition*

36

*Corp.*, 486 U.S. 847 (1988), as adopted into the Commonwealth's jurisprudence by *Petzold v. Kessler Homes, Inc.*, 303 S.W.3d 467 (Ky. 2010). *Liljeberg* set forth three factors to determine whether retroactive recusal is appropriate when KRS 26A.015 or SCR 4.300 are violated: "[1] the risk of injustice to the parties in the particular case, [2] the risk that the denial of relief will produce injustice in other cases, and [3] the risk of undermining the public's confidence in the judicial process." 486 U.S. at 864; *Petzold*, 303 S.W.3d at 473-74.

We first address whether any violation of KRS 26A.015 or SCR 4.300 occurred with respect to the trial. Morgan acknowledges that no overt sign of bias was shown during the trial itself (except, perhaps, unfavorable rulings), but contends that the trial judge's conversation with the families revealed partiality, conscious or not, that must have existed throughout the proceedings. As a result, the trial judge's alleged bias up until the point he spoke to the family is entirely speculative, the result of extending backward the impression of an interaction near the close of Morgan's trial. This situation is unlike that in *Liljeberg, Petzold,* or other cases where the source of the judge's partiality stemmed from the existence of some relationship to the litigation of which the judge should have been aware.[12] Rather, here, the partiality stems

_____

[12] *Liljeberg* arose from the judge's membership on Loyola University's Board of Trustees which had a financial interest in the outcome of the case. 486 U.S. at 850. *Petzold* was based on the trial judge's professional relationship with the defendants' daughter. 303 S.W.3d at 469. Other cases in this line of analysis present broadly similar fact patterns wherein a certain persistent, pre-existing fact calls into question the judge's impartiality. *See, e.g., Abbott, Inc. v. Guirguis*, 626 S.W.3d 475, 478-79 (Ky. 2021) (addressing judge's relationship with defendant corporation due to a dispute over duck-hunting land with president of corporation); *Presbyterian Church (U.S.A) v. Edwards*, 594 S.W.3d 199, 200-01 (Ky. 2018) (addressing situation where

37

from an ineffable feeling about the case, manifested by a benign, though admittedly improper, interaction at its close. A judge is permitted to have feelings or opinions about a case—we ask that judges refrain from partiality or the appearance of such; we do not ask them to be automatons. Because we decline to peer into the heart of the trial judge to locate bias prior to the inciting incident, Morgan's request that we reverse the trial in its entirety is denied.

We are left, then, with only Morgan's sentence to be effected by the remainder of the analysis. Although, Chief Justice Minton determined that the trial judge's interaction created a sufficient appearance of bias as to warrant his prospective recusal, and the inciting incident occurred prior to Morgan's sentencing, we are nevertheless compelled to deny relief because the issue has been rendered moot. Morgan has already served the maximum sentence she could have received for her convictions and this matter is not before the Court as it relates to Simpson.[13] Any redo of Morgan's sentencing cannot provide any meaningful relief. *See Dillingham v. Commonwealth*, 249 S.W.2d 827, 828 (Ky. 1952) ("[c]learly, the case is moot. Since appellant has already satisfied the sentence of the court, we could make no order on this appeal which would affect her status. We cannot remit the jail sentence already served, and even if

justice's spouse worked for a law firm involved in the case, but was not personally assigned to the case).

[13] By this, we do not assert that were Simpson to bring a similar CR 60.02 claim that we would rule in her favor. Such a motion would only invite deeper analysis not required here.

we should decide the sentence should not have have been imposed, an[] opinion could not afford appellant any effectual relief in this case[]").  Because we hold no violation existed to justify retroactive recusal as to the guilt phase and because any relief as to the sentencing phase is moot, Morgan's CR 60.02 motion was properly denied.

### III.    CONCLUSION

Based on the foregoing the judgments of the Christian Circuit Court with respect to Allison Simpson and Nina Morgan are affirmed.

All sitting.  VanMeter, C.J.; Bisig, Conley, Keller, Lambert and Nickell, JJ., concur.  Thompson, J., concurs in result only.

COUNSEL FOR APPELLANT,
ALLISON SIMPSON:

Sarah Dickerson Dailey
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLANT,
NINA MORGAN:

Aaron Reed Baker
Kathleen Kallaher Schmidt
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General